No. 01-027

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 187

IN THE MATTER OF C.P.,

A Youth in Need of Care.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

Honorable Russell Fagg, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Roy W. Johnson, Attorney at Law, Billings, Montana

For Respondent:

Honorable Mike McGrath, Attorney General, Helena, Montana

Nancy Schwartz, Child Protection Unit, Billings, Montana

Patrick Kenney, Attorney at Law, Billings, Montana (Guardian Ad Litem)

Submitted on Briefs: August 2, 2001
Decided: September 19, 2001

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Shannon appeals from the September 26, 2000, judgment of the District Court of the Thirteenth Judicial District, Yellowstone County, terminating her parental rights to her son, C.P. We affirm the judgment.

¶2 The issue presented is whether the District Court abused its discretion in terminating Shannon's parental rights to C.P.

¶3 C.P. was born April 7, 1999, in Yellowstone County and at the time of the termination hearing was seventeen months old. Shannon is the natural mother of C.P. C.P. has been under the protective custody of the Department of Public Health and Human Services ("the Department") since April 13, 1999. He was adjudicated a youth in need of care on August 17, 1999.

¶4 Shannon's parental rights to a sibling of C.P. were involuntarily terminated shortly before C.P.'s birth. That child, S.P., had been severely injured by Shannon's boyfriend, Josh. S.P. was placed in foster care in March 1998. The Department provided services and worked with Shannon for approximately one year to improve her parenting skills. Efforts to reunite Shannon with S.P. were unsuccessful, however. Shannon's parental rights to S. P. were terminated in March of 1999. Shannon did not appeal that decision.

¶5 Prior to termination of Shannon's parental rights to S.P., she became pregnant with a second child. This second child was fathered by Josh, the same man who had severely injured her first child. The second child, C.P., is the subject of this appeal.

¶6 Judge Fagg presided over both the proceeding involving S.P. and the proceeding involving C.P. Judge Fagg took judicial notice of the prior proceedings with regard to S.P. In particular, he noted that there had been testimony from Dr. Chessen, a clinical psychologist, who had performed a psychological evaluation of Shannon in April 1998. The testimony revealed that Shannon had a low frustration tolerance, insufficient capacity for delaying gratification, an indirect expression of hostility, a tendency toward passive-dependent relationships with men, and that she presented a moderately high risk of child abuse. Dr. Chessen concluded that although there was no evidence that Shannon had abused her baby (S.P.), "she certainly was not able to recognize a dangerous situation and did not act to protect her baby. Information from Shannon and DPHHS show that she was

not adequately meeting [her child's] needs." Dr. Chessen recommended that Shannon complete parenting classes and complete other programs and individual counseling to address issues of substance abuse, family abuse and low self-esteem, as well as her role in the cycle of alcoholism in her family and her choices of dysfunctional men.

¶7 In the context of the present matter, the District Court ordered that Shannon undergo an updated psychological evaluation by clinical psychologist Dr. Ned Tranel. Dr. Tranel was called as a witness by Shannon. He testified at the hearing, and the written results of his tests were admitted into evidence. Dr. Tranel testified that the results of his evaluation were consistent with the previous psychological data described by Dr. Chessen. Dr. Tranel's recommendations tracked Dr. Chessen's recommendations from two years earlier and included a recommendation that she participate in counseling designed to help her develop the concept of "empathetic attunement," i.e. the ability to recognize and respond to the emotional state of another person without verbal cues. Dr. Tranel testified that he had no information to indicate that Shannon's life circumstances had changed during the time period since her parental rights to S.P. had been terminated. It was his opinion that the best interests of C.P. would be served by terminating Shannon's parental rights.

¶8 In the instant matter, Shannon had three different treatment plans. Although she completed a few designated tasks in the various plans, her performance did not constitute compliance or successful completion. The guardian ad litem recommended termination of the parental rights of both Shannon and Josh.

## Standard of Review

¶9 The decision to terminate parental rights is a discretionary ruling reviewed for an abuse of discretion. *See, e.g.*, *In the Matter of J.M.J.*, 1999 MT 277, ¶ 16, 296 Mont. 510, ¶ 16, 989 P.2d 840, ¶16. The test for an abuse of discretion is "whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice." *J.M.J.*, ¶ 16. We will affirm findings of fact in termination of parental rights cases unless the findings are clearly erroneous; that is, whether they are supported by substantial evidence, whether the district court misapprehended the effect of the evidence, or whether this Court is left with a definite and firm conviction that the district court made a mistake. *In the Matter of A.C.*, 2001 MT 126, ¶ 36, 305 Mont. 404, ¶ 36, 27 P.3d 960, ¶ 36. We affirm a district court's conclusions of law if they are correct. *A.C.*, ¶ 36.

¶10 The termination of parental rights involves a fundamental liberty interest. Accordingly, a district court must adequately address each applicable statutory requirement to determine if it has been established, and the burden is on the party seeking termination to demonstrate by clear and convincing evidence that every requirement set forth in the statute has been satisfied. *In the Matter of S.M. and P.L.M.,* 2001 MT 11, ¶ 30, 304 Mont. 102, ¶ 30, 19 P.3d 213, ¶ 30.

## Discussion

¶11 The District Court concluded that Shannon previously had parental rights terminated to her child S.P., a sibling of C.P., and that the circumstances related to the termination in the previous case are still relevant to Shannon's ability to care for C.P. The court thus terminated Shannon's parental rights to C.P. pursuant to §§ 41-3-609(1)(d) and 41-3-403(2)(e), MCA. As an alternative basis for termination, the court concluded that, although Shannon had made improvements in her life as required by her treatment plans, partial and last minute compliance with a treatment plan is insufficient to constitute compliance or successful completion of the plans. Further, the court found that the circumstances were unlikely to change within a reasonable time.

¶12 Shannon's primary contention on appeal is that the Department did not meet its burden of proving that Shannon did not successfully complete the treatment plans and that the conduct or condition rendering Shannon unfit is unlikely to change within a reasonable time.

¶13 We do not, however, need to address the question of whether the District Court erred in concluding that the treatment plans were not successfully completed because that was an alternative rationale for the court's judgment. The primary basis for the termination of parental rights was the court's reliance on the fact that Shannon's parental rights to C.P.'s sibling, S.P., had been involuntarily terminated and the circumstances related to that termination remained relevant to her ability to adequately care for C.P. Sections 41-3-609(1)(d) and 41-3-403(2)(e), MCA.

¶14 Shannon contends that the prior situation wherein Josh inflicted severe injury upon S.P. was an isolated instance of Shannon's making a poor choice of a baby sitter. She paraphrases Dr. Tranel as having testified that if there had been no prior indication that a baby sitter might harm a child, the parent would have to bet on the sitter; that if a parent makes a poor choice of a baby sitter, she is not necessarily a terrible parent; that if it were

an isolated instance of choosing a poor baby sitter, he would consider it a "mistake."

¶15 Contrary to Shannon's characterization, Dr. Tranel, after reviewing the record, testified that Josh's abuse of S.P. was not an isolated incident. The District Court was of the same mind when it concluded that Shannon continued to deny the seriousness of the abuse to S.P. by Josh and refused to accept responsibility for placing S.P. at risk. This led the District Court to conclude, with regard to C.P., that termination under §§ 41-3-609(1)(d) and 41-3-403(2)(e), MCA, was appropriate.

¶16 Section 41-3-609(1)(d), MCA, provides, in pertinent part:

> (1) The court may order a termination of the parent-child legal relationship upon a finding that any of the following circumstances exist:
>
> . . .
>
> (d) the parent has subjected the child to any of the circumstances listed in 41-3-403 (2)(a) through (2)(e).

¶17 The circumstances listed in § 41-3-403(2)(e), MCA, include those where a parent has:

> had parental rights to the child's sibling or other child of the parent involuntarily terminated and the circumstances related to the termination of parental rights are relevant to the parent's ability to adequately care for the child at issue.

¶18 There is no question but that Shannon had her parental rights to C.P.'s sibling, S.P., involuntarily terminated. The only issue is whether the court abused its discretion in concluding that the circumstances related to the termination of Shannon's parental rights to S.P. are relevant to Shannon's present ability to adequately care for C.P.

¶19 Here the District Court recognized that it must give primary consideration to the best interests of the child as demonstrated by the child's physical, mental and emotional conditions and needs. Section 41-3-609(3), MCA. Furthermore, C.P. has been in foster care since his birth, and, if a child has been in foster care under the custody of the Department for fifteen of the most recent twenty-two months, his best interest must be presumed to be served by termination of parental rights. Section 41-3-604(1), MCA.

¶20 The District Court relied on the testing of Dr. Tranel whose findings were consistent with those of Dr. Chessen. Dr. Tranel's testimony establishes that the circumstances related to the termination of S.P. are relevant to Shannon's ability to adequately care for C. P. Dr. Tranel concluded, since there is no indication that Shannon's life circumstances have changed from the time of the previous termination, it is in the best interests of C.P. that Shannon's parental rights be terminated. We hold that there is substantial evidence in the record that the circumstances related to the termination of Shannon's parental rights to S.P. are relevant to Shannon's ability to adequately care for C.P. and that the continuation of the parent-child relationship between Shannon and C.P. will likely result in substantial risk of harm to C.P.'s health or welfare. The District Court did not abuse its discretion in concluding that it is in the best interests of C.P. that Shannon's parental rights be terminated.

¶21 Since § 41-3-609(1)(d), MCA, provides a separate and sufficient basis for termination of parental rights, we need not address the issue of whether Shannon successfully completed any of the various treatment plans.

¶22 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON

/S/ JIM RICE