No. 02-308

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 10

IN THE MATTER OF THE CUSTODY
AND PARENTAL RIGHTS OF

M.A.D. and C.D.,

    Youths In Need Of Care.



FILED

JAN 2 3 2003

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark,
Honorable Dorothy McCarter, Judge Presiding

COUNSEL OF RECORD:

    For Appellant:

        Peter Bovingdon, Assistant Public Defender, Helena, Montana

    For Respondents:

        Honorable Mike McGrath, Attorney General; Jim Wheelis, Assistant
Attorney General, Helena, Montana

        Leo Gallagher, County Attorney; Carolyn A. Clemens, Deputy
County Attorney, Helena, Montana

        Randi M. Hood, Chief Public Defender, Helena, Montana (For Youths)

Submitted on Briefs:  October 17, 2002

Decided:   January 23, 2003

Filed:

_____
        Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Appellant, D.D., natural mother of M.A.D. and C.D., appeals the District Court's Orders of January 29, 2002, and February 15, 2002, terminating her parental rights. We affirm.

¶2 The sole issue raised on appeal is whether the District Court abused its discretion in terminating D.D.'s parental rights.

## Background

¶3 In March 2000, D.D. was cited for endangering the welfare of her children. Police, in search of a juvenile offender with a serious criminal record, entered D.D.'s home where they found one child chewing on a cigarette and the other child eating nutshells off the floor. The children were three and five years old at the time. D.D. was not at home, and the adults in the residence were sleeping. D.D. had previously been cited for child endangerment in Ohio for leaving M.A.D. and C.D. alone when they were one and three years old.

¶4 The police referred the incident to the Montana Department of Health and Human Services (the Department), which began an investigation. Social workers from the Department learned that the oldest child, M.A.D., had been sexually molested by a male whom D.D. had let stay in the home. Another man staying with D.D. had kicked M.A.D. across the living room floor.

¶5 In April 2000, the Department entered into a treatment plan with D.D. The plan required D.D., if she had to leave the children, to place them with her stepmother and father.

2

The plan also required D.D. to screen visitors to her home, begin counseling, complete a chemical dependency evaluation, attend parenting classes, find employment, and perform several other tasks.

¶6    Shortly after entering into the first treatment plan, D.D. requested that the children be placed in foster care because she believed both she and her children were in danger. Ultimately, after a series of unsuccessful treatment plans, the Department filed a petition for the termination of D.D.'s parental rights. Shortly thereafter, D.D. moved to Wyoming to "start a new life," and in July 2001, she relinquished her parental rights; however, she later retracted the relinquishment.

¶7    A hearing on the termination of D.D.'s parental rights was held in November 2001. Dean Gregg, a clinical psychologist who had interviewed D.D., testified that D.D. had a below-average I.Q. of 84, and that she probably had a learning disorder which led her to choose associates unwisely and limited her ability to end relationships when necessary. Gregg further testified that D.D. was not familiar with children's normal developmental stages and that her treatment would be lengthy, from two to four years, given that she was neither insightful nor motivated.

¶8    M.A.D.'s primary therapist at Intermountain Children's Home, Margaret Ann Stimatz, also testified. At the time of the hearing, M.A.D. had been at Intermountain for approximately three months. Stimatz believed that M.A.D. had been sexually abused and that he had a history of physical abuse. She testified that M.A.D. resisted nurture and care, did not trust

3

adults, was aggressive with both adults and children, and had acted out sexually with both his younger brother and another boy in his foster home. She also testified that M.A.D.'s history showed that he was left unattended at times and that D.D.'s acquaintances had been violent toward him. She testified that his behavior was typical of children who had been sexually abused. Stimatz believed that, in order for D.D. to have a role in his life, she would have to be willing to work with his therapists; however, in the three months that M.A.D. had been at Intermountain, D.D. had only contacted Intermountain once. Stimatz noted that D.D. had not requested to see her children when she was in Helena for the termination hearing and that she had visited with her children only once in the five months prior to the hearing.

¶9 A social worker for the Department, who had worked extensively with D.D. testified that D.D. had failed to complete any of her treatment plans. While over the course of 18 months D.D. had obtained some evaluations, she had completed neither the therapy nor a psychosexual evaluation as outlined in the plans. The social worker also testified that she believed that D.D. still did not understand how to protect the children.

¶10 D.D. testified on her own behalf at the hearing. She explained that she was more stable since moving to Wyoming, that she had a steady job, that she lived with a man who worked regularly, and that she could get proper daycare for both her children.

¶11 After reviewing the testimony, the District Court ordered the termination of D.D.'s parental rights on January 29, 2002. An amended order of termination followed a few weeks later. In both, the District Court found that "[t]he problems which existed in March 2000,

4

which led to the decision of DPHHS to ask for custody of the youths still exist at this time," and that "[D.D.] is not likely to complete her [treatment] plans within a reasonable time." D.D. filed this timely appeal.

## Standard of Review

¶12 We review a trial court's decision to terminate parental rights for abuse of discretion. *See In re C.P.*, 2001 MT 187, ¶ 9, 306 Mont. 238, ¶ 9, 32 P.3d 754, ¶ 9 (citing *In re J.M.J.*, 1999 MT 277, ¶ 16, 296 Mont. 510, ¶ 16, 989 P.2d 840, ¶ 16). The test for an abuse of discretion is "whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice." *In re C.P.*, ¶ 9. The standard of review of a trial court's findings of fact in a parental termination case is whether the findings in question are clearly erroneous. *See Matter of P.E.* (1997), 282 Mont. 52, 56, 934 P.2d 206, 209; *Matter of J.L., D.L. and A.G.* (1996), 277 Mont. 284, 287, 922 P.2d 459, 461. The standard of review of a trial court's conclusions of law in such cases is whether its conclusions are correct. *See Matter of P.E.*, 282 Mont. at 56-57, 934 P.2d at 209; *Matter of J.L.*, 277 Mont. at 287, 922 P.2d at 461.

## Discussion

¶13 Section 41-3-609, MCA, which applies to the termination of parental rights, provides in pertinent part as follows:

> The court may order a termination of the parent-child legal relationship upon a finding that . . . the following circumstances exist: . . . (f) the child is an adjudicated youth in need of care and both of the following exist: . . . (ii) the

5

conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

D.D. argues that the District Court abused its discretion in finding that "[t]he problems which existed in March 2000 . . . still exist at this time," and that " she is not likely to complete her [treatment] plans within a reasonable time." These findings imply that subsection (f)(ii) of § 41-3-609, MCA, that the "conduct or condition" rendering her unfit was unlikely to change in a reasonable time, was satisfied. D.D. argues that the District Court erred because the "conduct or condition" rendering her unfit in March 2000, her lack of stability, no longer exists as she now leads a "stable" and "child-centered" life in Wyoming.

¶14    However, D.D.'s argument ignores the contrary testimony of a clinical psychologist, a therapist, and a social worker. Their testimony included the observation that D.D. had not completed any of her treatment plans and that she had essentially refused to obtain mental health and alcohol counseling. Certainly, the fact that D.D. had not completed a treatment plan within a year and a half indicates that D.D. is unlikely to complete one within a reasonable time and, consequently, the conduct rendering her unfit is similarly unlikely to change within a reasonable time. We hold that the District Court based its findings on substantial credible evidence. Therefore, we affirm the District Court's termination of D.D.'s parental rights.

_W. William Leaphart_
Justice

6

We concur:

Justices

7