

DA 07-0336

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 297

IN THE MATTER OF THE CUSTODY
AND PARENTAL RIGHTS OF

A.P.,

    A Youth in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDJ 07-009-Y
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Jim Wheelis, Chief Appellate Defender, and Lisa S. Korchinski, Assistant
Appellate Defender, Helena, Montana

    For Appellee:

        Hon. Mike McGrath, Attorney General; Jonathan M. Krauss, Assistant
Attorney General, Helena, Montana

        Brant S. Light, Cascade County Attorney; Sarah Corbally, Deputy County
Attorney, Great Falls, Montana

Submitted on Briefs:  October 10, 2007

Decided:  November 13, 2007

Filed:

_____
                     Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    A.H.P. appeals from an order of the Eighth Judicial District, Cascade County, terminating her parental rights.  We affirm.

¶2    A.H.P. presents the following issue for review:

¶3    Whether the District Court's termination of A.H.P.'s parental rights to A.P., pursuant to §§ 41-3-609(1)(d) and 41-3-423(2)(e), MCA, violated A.H.P.'s constitutional right to due process of law.

## PROCEDURAL AND FACTUAL BACKGROUND

¶4    A.H.P. is the natural mother of three children, A.P., D.P., and K.S.  Each of the children has a different father.  The Department of Public Health and Human Services (DPHHS) began receiving reports regarding A.H.P.'s parenting in 1997.  These reports included allegations of physical neglect, exposure to unreasonable risk, physical abuse, medical neglect, and sexual abuse of A.P. by an unidentified man.  DPHHS substantiated allegations against A.H.P. in December, 2001, August, 2004, December, 2004, and November, 2005.

¶5    The District Court granted DPHHS temporary investigative authority over the three children in October, 2004.  The District Court adjudicated the children as youths in need of care.  The District Court ordered A.H.P. to undertake a fifteen-month, five-step treatment plan on February 22, 2005.  The treatment plan required A.H.P. to do the following: (1) achieve a healthy mental status; (2) learn to parent adequately; (3) maintain adequate housing and a safe environment for the children; (4) maintain a relationship with the children; and (5) cooperate fully with DPHHS.  DPHHS provided A.H.P. with counseling, training, and support in conjunction with the treatment plan.

2

¶6 A.P.'s natural father agreed to take temporary custody of A.P. on February 22, 2005. The District Court granted him full custody on July 5, 2005. The District Court consequently dismissed A.P. from the youth in need of care proceeding. A.P. resided with her father for nearly two years. Sadly, DPHHS removed A.P. from her father's custody in January, 2007, after reports that he physically had abused her. A.P.'s father relinquished voluntarily his parental rights to A.P. on February 20, 2007, before the District Court had ruled on DPHHS's petition to terminate involuntarily his parental rights.

¶7 In the meantime, the District Court had continued the youth in need of care proceeding regarding A.P.'s siblings, D.P. and K.S. A.H.P. only minimally complied with the five-step treatment plan during the court-ordered fifteen-month treatment period. A.H.P. failed to meet the first goal of achieving a healthy mental status. DPHHS had established specific steps to achieve the first goal, taking into account A.H.P.'s borderline low-average intellectual ability, recurrent depression, and lack of consistent employment and family support. The steps included maintaining consistent telephone service, consistently taking prescribed medication, taking the children to all of their scheduled medical visits, attending all of her scheduled medical visits, and attending mental health counseling. A.H.P. achieved none of these goals.

¶8 A.H.P. also did not achieve the second goal of learning to parent adequately. DPHHS administered intensive family services to A.H.P. between January and August, 2005, that enabled A.H.P. temporarily to regain custody of the infant, K.S. DPHHS again removed K.S. from A.H.P.'s custody after a social worker visited A.H.P.'s home unannounced. The social worker discovered that A.H.P. had allowed various adults to move into the home,

3

including a new boyfriend. A.H.P. did not inform DPHHS of these changes and DPHHS had not approved of them, as required by the treatment plan.

¶9 The social worker reported that A.H.P. was not at home during the DPHHS home-visit. An unapproved babysitter was completely inattentive to K.S. during the 45-minute visit, while an unidentified man hid in an upstairs bedroom. The social worker reported unsafe and dirty conditions in the home. The social worker also observed that the babysitter allowed K.S. to eat old food from the floor. A.H.P. later reported to DPHHS that she had difficulty focusing on K.S. instead of focusing on her new boyfriend. A.H.P. admitted that her new boyfriend had alcohol issues that resulted in his losing custody of his own children.

¶10 A.H.P. also failed to achieve the third goal of maintaining adequate housing and a safe environment for the children. A.H.P. could not remember to pay rent monthly. She often faced eviction during the treatment period. A.H.P. failed to consider the children's safety when bringing people into the home. She allowed several unapproved adults to move in without her social worker's approval. A.H.P. brought three different boyfriends with substance abuse and mental health issues into the home during the fifteen-month treatment period without informing the social worker. A.H.P. also continually failed to make adequate childcare arrangements for K.S.

¶11 A.H.P. failed to achieve the fourth goal of maintaining a relationship with her children. A.H.P. was erratic in attending scheduled visits with K.S. after DPHHS had returned the child to foster care. As a result, DPHHS required A.H.P. to arrive at the appointment before K.S.'s foster family would leave their home to transport the child to the visit. A.H.P. missed 14 of 40 scheduled visits. A.H.P. also failed to achieve the fifth and

final goal of her treatment plan – cooperating with DPHHS. She failed to sign all of the necessary DPHHS releases, did not maintain weekly contact with her social worker, and did not address her problems or concerns with her social worker.

¶12 The District Court held a hearing on DPHHS's petition to terminate A.H.P.'s parental rights to A.P.'s siblings, D.P. and K.S., on February 6, 2007, nearly a month after DPHHS had removed A.P. from her father's custody. A.H.P. voluntarily relinquished her rights to D.P., but not K.S., on February 13, 2007. The court concluded that A.H.P. had failed to follow the treatment plan in a meaningful way. The court terminated A.H.P.'s parental rights to K.S. on March 1, 2007.

¶13 DPHHS petitioned for involuntary termination of A.H.P.'s parental rights to A.P. on April 2, 2007. DPHHS asserted that A.P.'s case met the statutory criteria for termination of A.H.P.'s parental rights, pursuant to §§ 41-3-609(1)(d) and 41-3-423(2)(e), MCA, in light of the District Court's recent decision to terminate parental rights to A.P.'s sibling, K.S. The DPHHS social worker testified at the May 1, 2007, hearing. The social worker outlined A.H.P.'s myriad and well-documented parenting issues since 1997. The social worker detailed A.H.P.'s failure to comply with the February, 2005, treatment plan in the youth in need of care proceeding that originally covered A.P. and her two siblings.

¶14 A.H.P. presented two objections at the hearing. First, A.H.P. argued that evidence from the termination proceeding regarding A.P.'s sibling was irrelevant to DPHHS's petition to terminate A.H.P.'s parental rights to A.P. Second, A.H.P.'s counsel argued in the alternative that the statutes that allow a district court to terminate parental rights to one child on the basis of the previous termination of parental rights to the child's sibling created a

5

statutory presumption of parental unfitness. A.H.P. contended that such a presumption violated A.H.P.'s constitutional rights to due process of law.

¶15 The District Court overruled A.H.P.'s objections. The District Court considered testimony from the social worker and A.P.'s guardian ad litem supporting termination. The District Court also took judicial notice of its previous order to terminate involuntarily A.H.P.'s parental rights to K.S. A.H.P. brought no witnesses on her behalf. The District Court concluded that the clear and convincing evidence in the involuntary termination of A.H.P.'s parental rights to K.S., just two months earlier, was relevant to the present termination proceeding. The District Court further concluded that the record established that DPHHS was not required to make further reasonable efforts to reunify A.P. with her mother, A.H.P. The District Court terminated A.H.P.'s parental rights on May 4, 2007. A.H.P. appeals.

## DISCUSSION

¶16 *Whether the District Court's termination of A.H.P.'s parental rights to A.P. pursuant to §§ 41-3-609(1)(d) and 41-3-423(2)(e), MCA, violated A.H.P.'s constitutional right to due process of law.*

¶17 Section 41-3-609, MCA, establishes the criteria for termination of parental rights. Subsection (1)(d) provides that a district court may use its discretion to terminate parental rights when DPHHS has shown by clear and convincing evidence that "the parent has subjected a child to any of the circumstances listed in 41-3-423(2)(a) through (2)(e)." Section 41-3-609(1)(d), MCA. The involuntary termination of parental rights to the child's sibling constitutes one of those circumstances as long as "the circumstances related to the

6

termination of parental rights are relevant to the parent's ability to adequately care for the child at issue." Section 41-3-423(2)(e), MCA. This statute frees DPHHS from making further efforts to reunify the family once the statutory elements are met. Section 41-3-423(2)(a) through (e), MCA.

¶18 A parent's right to the care and custody of a child constitutes a fundamental liberty interest that must be protected by fundamentally fair procedures. *In re D.B. and D.B.*, 2007 MT 246, ¶ 17, 339 Mont. 240, ¶ 17, 168 P.3d 691, ¶ 17. Proceedings to terminate parental rights must meet due process requisites guaranteed by the Montana and United States Constitutions. *In re A.N.W.*, 2006 MT 42, ¶ 34, 331 Mont. 208, ¶ 34, 130 P.3d 619, ¶ 34. Fundamental fairness and due process require that a parent not be placed at an unfair disadvantage during the termination proceedings. *In re A.N.W.*, ¶ 34.

¶19 A.H.P. advances two arguments to support her contention that the termination of her parental rights to A.P. violated her due process rights. First, she argues that the District Court violated her due process rights when it terminated her parental rights to A.P. based on the involuntary termination of A.H.P.'s parental rights to A.P.'s sibling. Second, she argues in the alternative that the evidence supporting the termination of her parental rights to A.P.'s sibling was not relevant.

I

¶20 A.H.P. argues that §§ 41-3-609(1)(d) and 41-3-423(2)(e), MCA, together created a statutory presumption of A.H.P.'s parental unfitness as to A.P. once the District Court terminated A.H.P.'s parental rights to K.S. A.H.P. asserts that this presumption impermissibly shifted onto her the burden to prove her parental fitness when the burden

7

properly rested on the State to prove A.H.P.'s *unfitness* under Montana law. A.H.P. argues that a statutory presumption of parental unfitness unfairly disadvantaged her and violated her due process rights. We have not yet had the opportunity to examine whether a termination pursuant to §§ 41-3-609(1)(d) and 41-3-423(2)(e), MCA, meets constitutional due process requirements. Whether a person has been denied a due process right presents a question of constitutional law, and we exercise plenary review. *In re A.S.*, 2004 MT 62, ¶ 9, 320 Mont. 268, ¶ 9, 87 P.3d 408, ¶ 9.

¶21 A.H.P. cites no Montana authority to support her contention that the proceeding was fundamentally unfair or unfairly disadvantaged her. Instead, A.H.P. analogizes to the U.S. Supreme Court's decision in *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208 (1972). In *Stanley*, the Court considered whether a statute that excluded unwed fathers from the statutory definition of "parent" violated constitutional due process rights. *Stanley*, 405 U.S. at 646-47, 92 S. Ct. at 1210. The Court held that the statute effectively presumed unwed fathers' unfitness and violated their due process rights. The Court determined that unwed fathers were entitled to fitness hearings before they could be denied custody of their natural children. *Stanley*, 405 U.S. at 657-58, 92 S. Ct. at 1216.

¶22 *Stanley* has no application here. Unlike the father in *Stanley*, Montana law did not deprive A.H.P. of process. *Stanley*, 405 U.S. at 650, 92 S. Ct. at 1212. On the contrary, A.H.P. received notice of the petition to terminate, the District Court held a hearing on the merits, and A.H.P. was present and represented by counsel at that hearing. The State correctly points out that A.H.P. did not take advantage of her opportunity to be heard in the proceeding. She did not present any witnesses. She did not present any evidence to show

8

that her circumstances had changed in any way since the termination proceeding regarding her parental rights to K.S.

¶23   We also reject A.H.P.'s contention that §§ 41-3-609(1)(d) and 41-3-423(2)(e), MCA, created a presumption against her. DPHHS retains the burden of establishing two statutory elements when it petitions for termination of parental rights under the two statutes. First, it must show that a parent's rights to the child's sibling previously have been terminated. Second, it must show that the circumstances related to the termination of parental rights as to the sibling "are relevant to the parent's ability to adequately care for the child at issue." Section 41-3-423(2)(e), MCA. A district court exercises discretion to terminate parental rights only if DPHHS establishes the statutory elements by clear and convincing evidence. Section 41-3-609(1)(d), MCA. The statute does not shift the burden of proof from DPHHS to the parent as A.H.P. asserts.

¶24   Other jurisdictions have interpreted nearly identical statutory provisions, adopted pursuant to the federal Adoption and Safe Families Act of 1997, 42 U.S.C. § 671. We look to these decisions for guidance in the absence of Montana law on this issue. Those states have determined that a district court's exercise of its discretion most significantly protects a parent's due process right. *In re L.N.*, 689 N.W.2d 893, 896-98 (So. Dak. 2004); *State ex rel. Children, Youth v. Amy B.*, 61 P.3d 845, 849-50 (N.M. App. 2002); *In re Heather C.*, 751 A.2d 448, 454-56 (Me. 2000). The statutes do not require the court to terminate. The statutes instead provide the district court with the discretion to grant or deny the state's petition for termination if the state proves the statutory elements. *In re L.N.*, 689 N.W.2d at 896-98; *Amy B.*, 61 P.3d at 849. The statutes also do not limit the decision to the facts of the

9

prior termination. The district court also considers any available evidence relating to present family circumstances and the specific child at issue. *In re Heather C.*, 751 A.2d at 455.

¶25 We determine that these procedures set forth in the statutes provide fundamentally fair process. The statutes provide the parent with a process to challenge the state's termination petition and impose the burden of proof on the state without placing the parent at an unfair disadvantage. We hold that §§ 41-3-609(1)(d) and 41-3-423(2)(e), MCA, do not violate a parent's constitutional right to due process.

II

¶26 A.H.P. also argues that the circumstances of the termination of her parental rights to A.P.'s sibling were irrelevant to her ability to care for A.P. pursuant to §§ 41-609-(1)(d) and 41-3-423(2)(e), MCA. A.H.P. contends that the 10 year age difference between the children rendered irrelevant the circumstances of the previous termination. She argues that although A.H.P. was adjudicated unfit to parent K.S., an infant, she nevertheless could be "minimally fit" to parent A.P., a 12 year old. A.H.P. asserts that due process principles mandate that the State should have been required to offer independent evidence specific to A.P.'s circumstances.

¶27 We have held above that §§ 41-3-609(1)(d) and 41-3-423(2)(e), MCA, on their face do not violate constitutional due process rights. ¶25. We therefore now address whether the District Court properly applied the statutes. The termination of parental rights involves a fundamental liberty interest. As such, a district court must adequately address each applicable statutory requirement to determine if it has been established, and the burden is on the party seeking termination to demonstrate by clear and convincing evidence that every

10

requirement set forth in the statute has been satisfied. *In re C.P.*, 2001 MT 187, ¶ 10, 306 Mont. 238, ¶ 10, 32 P.3d 754, ¶ 10.

¶28 We review a district court's decision to terminate parental rights for abuse of discretion. A district court abuses its discretion only if it acts arbitrarily, without employing conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *In re A.N.W.*, ¶ 29. We review a district court's findings of fact to determine whether those findings are clearly erroneous. We review the court's conclusions of law to determine whether the court correctly interpreted and applied the law. *In re A.N.W.*, ¶ 28.

¶29 The record reveals that the District Court adequately addressed both applicable statutory requirements--that A.H.P.'s parental rights to A.P.'s sibling were terminated and that the circumstances of the termination were relevant to A.P.'s case. Section 41-3-423(2)(e), MCA. The court based its decision on documentary and testimonial evidence presented at the May 2, 2007, hearing regarding A.H.P.'s rights to A.P. This evidence demonstrated that A.H.P. had failed to achieve every goal established by the court-ordered treatment plan originally intended to cover A.H.P.'s parenting of both K.S. and A.P. The District Court placed particular emphasis on evidence that A.H.P. continually allowed inappropriate men to live in the family home. The court found this evidence particularly persuasive in light of a past sexual assault on A.P. by a man A.H.P. had allowed in the home.

¶30 We have determined that the circumstances of a prior termination continue to be relevant in a later termination of a sibling under §§ 41-3-609(1)(d) and 41-3-423(2)(e), MCA, unless the circumstances have changed. *In re K.J.B.*, 2007 MT 216, ¶¶ 34-36, 339 Mont. 28, ¶¶ 34-36, 168 P.3d 629, ¶¶ 34-36. The District Court afforded A.H.P. every

11

opportunity to bring her own witnesses and evidence to demonstrate that her circumstances had changed since the court terminated her parental rights to K.S. A.H.P. offered no testimonial or documentary evidence whatsoever at the May 2, 2007, termination hearing. The court's determination that the prior parental termination was relevant derived from application of the court's conscientious judgment based on relevant evidence. We determine that the District Court did not abuse its discretion when it terminated A.H.P.'s parental rights to A.P.

¶31     Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE