DA 07-0480

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 39

IN THE MATTER OF M.P.,

   A Youth in Need of Care.

APPEAL FROM:     District Court of the Sixth Judicial District,
                 In and For the County of Park, Cause No. DN 06-21
                 Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Jim Wheelis, Chief Appellate Defender; Shannon L. McDonald, Assistant
                Appellate Defender, Helena, Montana

        For Appellee:

                Hon. Mike McGrath, Attorney General; C. Mark Fowler, Assistant Attorney
                General, Helena, Montana

                Brett D. Linneweber, Park County Attorney, Livingston, Montana

        Guardian Ad Litem:

                Vuko J. Voyich, Anderson & Voyich, Livingston, Montana

                                        Submitted on Briefs:  January 4, 2008

                                              Decided:  February 5, 2008

Filed:

        _____
                            Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    R.P. appeals from an order of the Sixth Judicial District, Park County, terminating his parental rights. We affirm.

¶2    We review the following issue on appeal:

¶3    *Did the District Court's decision to terminate the parent-child relationship between R.P. and M.P. constitute an abuse of discretion?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    M.P. tested positive for marijuana on June 23, 2006--the day he was born. M.P.'s mother admitted drug use during her pregnancy and an on-going addiction to methamphetamine. The Department of Health and Human Services (Department) removed M.P. and placed him in foster care a few days after his birth. The Department placed M.P. with his maternal grandmother in California.

¶5    The Department petitioned the District Court for immediate protection and emergency protective services five days after M.P.'s birth. The District Court adjudicated M.P. as a youth in need of care on July 25, 2006. M.P.'s mother relinquished her parental rights two days later.

¶6    M.P.'s father, R.P., was incarcerated at the time of his son's birth. The Department filed a petition to terminate R.P.'s parental rights in October of 2006. The Department moved for an order dismissing the petition to terminate after learning that R.P. had a parole hearing scheduled for November 30, 2006. The Department re-filed the petition after

determining that R.P. had failed to obtain parole and would remain ineligible for parole for at least another year.

¶7 The District Court held a hearing regarding the termination of R.P.'s parental rights on April 24, 2007. Jacqui Poe (Poe), a community social worker with the Department, testified at the hearing. Poe confirmed that the Department had placed M.P. with his maternal grandmother shortly after his birth. Poe highlighted the special attachment needs of infants during their formative years. Poe testified that M.P.'s early placement created an important caregiver attachment between M.P. and his grandmother.

¶8 Poe testified that the combination of M.P.'s infancy and R.P.'s incarceration prevented regular contact between the child and his father. Poe addressed R.P.'s efforts concerning his parent-child relationship with M.P. R.P. had provided no child support. R.P.'s incarceration prevented him from visiting his son.

¶9 Poe asserted that parents who are interested in creating a relationship with their child usually make efforts to contact the Department. Poe testified that a request for pictures that came through R.P.'s counsel comprised R.P.'s only effort to contact the Department. Poe informed the court that the Department considered R.P.'s incarcerated state to constitute abandonment under § 41-3-423(2)(a), MCA.

¶10 R.P. also testified at the termination hearing. R.P. informed the court that he had recently enrolled in an anger management course. He testified that he also had signed up for a parenting class. R.P. asserted that Poe had made no efforts to contact him. R.P. stated that, with regard to contacting the Department concerning M.P., "I assumed everything I had to do

3

would be through [counsel] . . . ." R.P. concluded by asking the court to give him the opportunity to support and parent M.P.

¶11    The District Court terminated R.P.'s parental rights in its Findings of Fact, Conclusions of Law, and Order entered on June 4, 2007. The court found that the child "will have been in foster placement for more than 15 of the most recent 22 months before the father will be eligible for parole in November 2007 . . . ." The court determined, therefore, that a presumption existed that the child's best interests required termination of R.P.'s parental rights. The court found that R.P. "failed to present any credible evidence at the hearing that controverts this presumption."

¶12    The District Court took note of R.P.'s criminal history, citing his seven prior felonies and four prior revocations. The court noted R.P.'s parole denial in November of 2006, and the fact that R.P. would not become eligible for parole again until November of 2007. The court found that R.P. had to serve approximately three more years in prison. The court found that "the condition rendering the father unfit – his imprisonment – is unlikely to change within a reasonable time."

¶13    The court also found that R.P. had a history of voluntary under-employment, "despite [R.P.'s] assertion that he wishes to support M.P." The court found that R.P. had failed to establish a substantial relationship with his son by failing to visit or have regular contact with M.P. The court determined that R.P. had failed to manifest an ability to assume legal and physical custody of M.P. due to his incarceration. The court found that R.P. had abandoned M.P. due to R.P.'s incarceration, as well as the testimony of both Poe and R.P.

4

¶14 The court noted that R.P.'s incarceration would continue for more than one year. The court accepted Poe's testimony that M.P. required immediate permanent placement to meet his developmental, cognitive, and psychological stability needs. The court found that R.P.'s incarceration prevented him from providing an immediate permanent placement. Accordingly, the court found that "reunification with the father is not in M.P.'s best interests because of M.P.'s placement with his maternal grandmother, his age, and his needs." The court concluded that the Department did not need to provide R.P. with a treatment plan.

¶15 The District Court ultimately concluded that the Department, pursuant to § 41-3-609, MCA, had established the statutory criteria for terminating R.P.'s parental rights by clear and convincing evidence. The court terminated the parent-child relationship of R.P. and M.P. in order to serve "the best interests of M.P."

## STANDARD OF REVIEW

¶16 We review a district court's decision to terminate parental rights to determine whether the district court abused its discretion. *In re D.B.*, 2007 MT 246, ¶ 16, 339 Mont. 240, ¶ 16, 168 P.3d 691, ¶ 16. A district court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or so exceeds the bounds of reason as to perform a substantial injustice. *In re D.B.*, ¶ 16.

¶17 We review a district court's findings of fact to determine whether they are clearly erroneous. *In re D.B.*, ¶ 18. We review a district court's conclusions of law to determine whether the district court correctly interpreted and applied the law. *In re Custody and Parental Rights of A.P.*, 2007 MT 297, ¶ 28, 340 Mont. 39, ¶ 28, 172 P.3d 105, ¶ 28.

## DISCUSSION

¶18 R.P. argues that the District Court improperly relied on the presumption in favor of termination set forth in § 41-3-604(1), MCA. The State concedes that the presumption found in § 41-3-604(1), MCA, does not apply, but argues that the District Court properly terminated R.P.'s parental rights on alternative grounds. The State argues that the District Court's reference to the presumption provided in § 41-3-604(1), MCA, constitutes harmless error.

¶19 Parents have a fundamental liberty interest in their right to the care and custody of their children that requires protection through fundamentally fair procedures. *In re D.B.*, ¶ 17. We have held that the district court must address adequately the applicable statutory requirements before terminating parental rights. *In re D.B.*, ¶ 17. Section 41-3-609, MCA, sets forth the substantive criteria concerning the termination of a parent-child legal relationship. A district court may terminate a parent's rights if it finds that the State has established any one of the conditions listed in the statute. Section 41-3-609(1), MCA; *In the Matter of S.T.*, 2008 MT 19, ¶¶ 15, 19, ___ Mont. ___, ¶¶ 15, 19, ___ P.3d ___, ¶¶ 15, 19. The court must find that the State has established the condition by clear and convincing evidence. Section 41-3-609(1), MCA.

¶20 Section 41-3-604(1), MCA, establishes a presumption that termination of a parent-child relationship is in a child's best interests if the child "has been in foster care under the physical custody of the state for 15 months of the most recent 22 months . . . ." Although § 41-3-604, MCA, establishes a presumption regarding a child's best interests, the provision primarily concerns the State's obligation to file a petition to terminate parental rights.

6

Indeed, we recently have confirmed that the "'presumption in § 41-3-604(1), MCA, neither eliminates the substantive requirements of § 41-3-609, MCA, nor diminishes the clear and convincing burden of proof on the party seeking termination of parental rights.'" *In re D.B.*, ¶ 23 (quoting *In re B.H.*, 2001 MT 288, ¶ 29, 307 Mont. 412, ¶ 29, 37 P.3d 736, ¶ 29).

¶21 The District Court affirmatively found that a presumption existed that terminating R.P.'s parental rights would best serve M.P.'s interests due to the fact that M.P. "will have been in foster placement for more than 15 of the most recent 22 months before the father will be eligible for parole . . . ." The court referenced this presumption twice in its findings of fact and found that the father had failed to controvert the presumption. Section 41-3-604(1), MCA, provides that a presumption in favor of termination exists only "[i]f a child has been in foster care . . ." for 15 of the most recent 22 months.

¶22 The State concedes that no presumption existed in this case because M.P. had not yet remained in foster care for the requisite length of time. We note that in addition to finding that a presumption in favor of termination exists, the District Court advanced factual findings pertaining to conditions that support termination under § 41-3-609, MCA. We recently have reaffirmed that a district court properly terminates parental rights if it correctly relies upon "any one basis . . . ." *In the Matter of S.T.*, ¶ 15. Accordingly, we determine only whether any one of the bases asserted by the District Court under § 41-3-609, MCA, supports the termination of R.P.'s parental rights.

¶23 Section 41-3-609(1)(f), MCA, provides that a court may order termination if a child constitutes a youth in need of care and (1) the parent has not complied with an appropriate

7

treatment plan, and (2) the condition rendering the parent unfit is unlikely to change within a reasonable time. The statute absolves the State from providing a treatment plan if the parent "is or will be incarcerated for more than 1 year and reunification of the child with the parent is not in the best interests of the child because of the child's circumstances . . . ." Section 41-3-609(4), MCA. The statute also specifically directs the district court to consider a parent's history of violent behavior and "present judicially ordered long-term confinement . . ." when determining whether the condition rendering the parent unfit is likely to change within a reasonable time. Section 41-3-609(2), MCA.

¶24     The District Court noted that the court previously had adjudicated M.P. as a youth in need of care. The District Court found that R.P. would remain incarcerated for more than one year. The court specifically found that reunification would not serve M.P.'s best interests due to M.P.'s age and his developmental, cognitive, and psychological needs.

¶25     The District Court noted R.P.'s extensive criminal history, his recent parole denial, and his ineligibility for another parole hearing until November of 2007. Accordingly, the court determined that the condition rendering R.P. unfit to parent, his incarceration, was unlikely to change within a reasonable time. The District Court's factual findings reveal that the court relied on § 41-3-609(1)(f), MCA, as one basis under the statute warranting termination of R.P.'s parental rights.

¶26     A district court also may terminate a putative father's rights if the father fails to contribute to the support of a child for an aggregate period of one year when able to do so, or if the father fails to establish a substantial relationship with the child. Sections 41-3-

8

609(1)(e) and 41-3-423(3)(a)-(b), MCA. A putative father may demonstrate a substantial relationship with his child by having regular contact with the child or the agency having the care and custody of the child and by "manifesting an ability and willingness to assume legal and physical custody of the child . . ." if the other parent does not have physical custody of the child. Section 41-3-423(3)(b)(ii)-(iii), MCA.

¶27 The District Court found that R.P. failed to "present any testimony or evidence indicating that he had actually supported, established a relationship or had any contact with his son, M.P." The court also found that R.P. had a history of voluntary under-employment despite his assertions that he wished to support M.P. The court noted that neither R.P., nor M.P.'s biological mother, presently maintained physical custody of the child, and found that R.P. had failed to manifest an ability to assume legal and physical custody of M.P. The court concluded that R.P., as a putative father, had failed to support and establish a relationship with M.P. as outlined under § 41-3-423(3)(a)-(b), MCA. Thus, the court found that R.P. satisfied another condition for termination listed under § 41-3-609(1)(e), MCA.

¶28 The District Court's factual findings and conclusions of law demonstrate that the court did not rely on the presumption in § 41-3-604(1), MCA, when terminating R.P.'s parental rights. Although the District Court twice mentioned the presumption, the factual findings and conclusions of law entered by the District Court speak directly to the criteria listed in § 41-3-609(1), MCA, and specifically address the best interests of M.P. The record demonstrates that the District Court conscientiously employed its judgment and did not exceed the bounds of reason when it terminated R.P.'s parental rights.

9

¶29    We recognize the significant limitations that an incarcerated father faces when trying to establish a relationship with his infant child. We also note, however, that §§ 41-3-609 and 41-3-423, MCA, generally accommodate incarcerated individuals. Section 41-3-423(3), MCA, for example, employs language that accounts for putative fathers burdened by physical or financial limitations. The statute generally requires only that putative fathers make those efforts available under the circumstances. Section 41-3-423(3), MCA. The District Court's factual findings demonstrate that R.P. failed to take even those opportunities that remained available to him during his incarceration.

¶30    The District Court's consideration of R.P.'s incarcerated state does not diminish the State's burden of affirmatively establishing the criteria found in § 41-3-609(1), MCA, by clear and convincing evidence. *In re D.B.*, ¶ 18. Likewise, district courts must continue to give primary consideration to the best interests of the child. *In re K.J.B.*, 2007 MT 216, ¶ 24, 339 Mont. 28, ¶ 24, 168 P.3d 629, ¶ 24. We note only that the provisions governing the termination of a parent-child relationship necessarily consider a parent's behavior and his or her efforts of parental support and care. Sections 41-3-609 and 41-3-423, MCA. The statutes specifically direct district courts to consider long-term confinement and incarceration lasting more than one year. Sections 41-3-609(2)(d) and (4)(c), MCA. Furthermore, we have recognized that "a child may need help while a parent is incarcerated and that such help cannot be delayed pending the parent's release." *Matter of D.G.*, 244 Mont. 17, 21, 795 P.2d 489, 491 (1990).

¶31    The District Court made specific factual findings concerning M.P.'s best interests and the criteria set forth in § 41-3-609, MCA.  The District Court concluded that the State had established by clear and convincing evidence that terminating R.P.'s parental rights served M.P.'s best interests.  We determine that the District Court's decision to terminate R.P.'s parental rights did not constitute an abuse of discretion.

¶32    Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM RICE