DA 08-0044

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2008 MT 216

IN THE MATTER OF
E.D., N.T., and M.S.,

     Youths in Need of Care.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DN 05-003A
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        James B. Wheelis, Chief Appellate Defender; Tammy Hinderman, Legal
Intern, Helena, Montana

    For Appellee:

        Hon. Mike McGrath, Attorney General; Sheri K. Sprigg, Assistant Attorney
General, Helena, Montana

        Ed Corrigan, Flathead County Attorney; Katie Schultz, Deputy County
Attorney, Kalispell, Montana

Submitted on Briefs:  May 21, 2008

Decided:  June 17, 2008

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     J.D. appeals from an order of the Eleventh Judicial District Court, Flathead County, terminating her parental rights.  We affirm.

¶2     We review the following issue on appeal:

¶3     *Did the District Court abuse its discretion when it terminated J.D.'s parental rights?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     Flathead County Child Protective Services initially received referrals of concern regarding J.D. in 1994.  Eight separate referrals alleged physical abuse of J.D. by her step-father and physical neglect of J.D.'s first child by J.D.  The Department removed J.D.'s first child, E.D., from her care in 1996.  J.D. was seventeen years old at the time, pregnant with her second child, and addicted to drugs.  The Department removed her children again due to drug use when E.D. was eighteen months old and her second child, N.T., was nine months old.  J.D. attended inpatient treatment at the Montana Chemical Dependency Center, completed parenting classes and counseling sessions, and engaged in random urinalysis in order to regain custody of her children.  J.D. and her two children reunified and she remained sober for approximately two years.

¶5     J.D. resumed drug use again at age 22.  J.D. had a third son, M.S., who was twelve months old at this time.  The Department removed all three of J.D.'s children in January of 2005.  All three children had seen their mother use drugs. They also had witnessed physical violence between their mother and her boyfriend.  The two oldest children had witnessed

2

sexual behavior occurring between their mother and her boyfriend. J.D.'s oldest child stated that J.D. sometimes would not feed the children at night and would make them stay in a separate room while she and her boyfriend used drugs. J.D. admitted at this time to using marijuana and methamphetamine. She also agreed that her children met the definition of youths in need of care. The District Court adjudicated all three children as youths in need of care in May of 2005, and the Department received temporary legal custody of the children.

¶6 The Department created a treatment plan to help J.D. reunify with her children. The treatment plan set forth six separate areas with goals and requirements. The plan required J.D. to remain free from alcohol and drugs and to submit to a drug testing program. The plan required J.D. to provide documentation verified by a doctor for any prescribed medications. J.D. also had to secure and maintain housing appropriate for herself and her children under the plan.

¶7 The District Court held a hearing regarding the treatment plan on April 21, 2006. J.D. attended the hearing. The court approved the plan in an order issued on May 22, 2006. The Department received three extensions of temporary legal custody over the children. The Department ultimately petitioned the District Court to terminate J.D.'s parental rights on November 13, 2006.

¶8 The District Court held a hearing on the Department's petition to terminate J.D.'s parental rights. The court heard testimony from seven social workers who testified on behalf of the Department. J.D. also testified at the hearing. She admitted that she had made mistakes in the past concerning her children and her choices as a parent. She attributed her

3

initial failure to comply with the treatment plan to her various medical conditions. She asserted that these medical problems had left her in pain and "stuck in a fetal position," and had rendered her unable to comply with the plan's urinalysis testing requirements. J.D. insisted that she had made significant improvements and recently had complied with her treatment plan.

¶9     The termination hearing ran for two days and ended on July 24, 2007. The District Court issued its Findings of Fact, Conclusions of Law, and Order Terminating Parental Rights and Approving Permanency Plan, on December 26, 2007. The court issued one hundred and eighty-nine findings of fact in its order terminating J.D.'s parental rights. The court detailed J.D.'s family history and drug use history, J.D.'s attempted compliance with the treatment plan, her visitation with her children, the abuse and neglect of the children, and the subsequent impact upon the children. The court's findings of fact also addressed J.D.'s history of involvement with the Department, the services and efforts put forth by the Department in the present matter, J.D.'s potential for change, and the physical and emotional needs of the children.

¶10     The District Court found that J.D. had not complied with the treatment plan's requirement that she participate in a urinalysis testing program and remain drug free. The court found that J.D. had failed five times to report for urinalysis in June of 2006. J.D. failed to test and did not report during August of 2006. These failures triggered the Department's removal of J.D. from the urinalysis testing program. The court determined that J.D. had

attempted to comply with a testing program only "when the Termination Hearing was looming."

¶11 The court found that J.D. consistently had tested positive for drugs. J.D. had valid prescriptions for some of the drugs present in her system during urinalysis testing. J.D. also had tested positive, however, for a number of drugs for which she did not have a prescription. Authorities had arrested J.D. for drug possession on July 28, 2006.

¶12 The District Court determined that J.D. had failed to comply with the treatment plan's requirement that she maintain appropriate housing during the majority of her time under the plan. J.D. had lost her housing in May of 2006 due to nonpayment of rent. J.D. failed to maintain appropriate housing for twelve of the fourteen months from the beginning of her treatment plan until the termination hearing.

¶13 Finally, the District Court determined that J.D. likely would not change her conduct. The court cited the pattern of J.D.'s drug use and poor choices that the witnesses had revealed at the termination hearing. The court noted that J.D. had revealed that she had acquired the appropriate housing and urinalysis testing "specifically in preparation for the Termination Hearing--not for the benefit of her children." The court noted that the removal of her children did not stop J.D. from resuming her drug use and poor associations during those periods when she had regained physical custody of the children. The court found that J.D. knowingly had resumed abusive relationships that had endangered both J.D. and her children. The court described the lives of J.D.'s children as consisting of "an emotional

rollercoaster from the day they were born." The court determined that J.D.'s children had begun to "act out behaviorally" as a result of the abuse and neglect that they had suffered.

¶14 The District Court determined that J.D. had not complied with an appropriate treatment plan and that her conduct likely would not change "within a reasonable period of time, if ever." The court concluded that terminating J.D.'s parental rights would serve the best interests of the children. The court ordered J.D.'s parental rights terminated with respect to all three children. J.D. appeals.

## STANDARD OF REVIEW

¶15 We review a district court's decision to terminate a parent's rights for an abuse of discretion. *In re M.P.*, 2008 MT 39, ¶ 16, 341 Mont. 333, ¶ 16, 177 P.3d 495, ¶ 16. A district court abuses its discretion if it "acts arbitrarily, without employment of conscientious judgment, or so exceeds the bounds of reason as to perform a substantial injustice." *In re M.P.*, ¶ 16.

¶16 A district court must address adequately each applicable statutory requirement before terminating a parent's rights. *In re D.B.*, 2007 MT 246, ¶ 17, 339 Mont. 240, ¶ 17, 168 P.3d 691, ¶ 17. The district court must make specific factual findings to address the statutory requirements. *In re D.B.*, ¶ 18. We review these findings of fact to determine whether they are clearly erroneous. *In re D.B.*, ¶ 18. We will consider a district court's finding of fact clearly erroneous if the finding is unsupported by substantial evidence, if the court misapprehended the effect of the evidence, or if the finding leaves this Court with the

6

definite and firm conviction that the district court made a mistake. *In re S.T.*, 2008 MT 19, ¶ 8, 341 Mont. 176, ¶ 8, 176 P.3d 1054, ¶ 8.

## DISCUSSION

¶17 *Did the District Court abuse its discretion when it terminated J.D.'s parental rights?*

¶18 J.D. argues that the District Court terminated her rights as a parent in violation of the statutes controlling the termination of a parent-child relationship. J.D. asserts that the Department failed to modify properly the treatment plan to accommodate her special medical needs. J.D. further asserts that the court cited events that had occurred before the court had approved of the treatment plan in May of 2006 as proof that J.D. had not complied with the treatment plan. The State counters that it had no obligation to alter the treatment plan for the unsubstantiated medical needs asserted by J.D. The State argues that the court properly determined that J.D. had failed to comply with the treatment plan and that the court cited past events only to demonstrate the improbability that J.D.'s conduct would change within a reasonable time.

¶19 A parent's right to maintain the care and custody of a child constitutes a fundamental liberty interest that fundamentally fair procedures must protect. *In re D.B.*, ¶ 17. Section 41-3-609, MCA, sets forth the criteria governing a court's authority to terminate a parent-child legal relationship. Section 41-3-609(1)(f), MCA, authorizes a court to terminate a parent-child relationship if the child qualifies as a youth in need of care and (1) the parent has failed to comply with an appropriate treatment plan, and (2) the condition or conduct rendering the parent unfit is unlikely to change within a reasonable time.

¶20    This Court recently confirmed that no single, generalized definition exists of an appropriate treatment plan. *In re D.B.*, ¶ 32. We consider a number of factors in determining whether the Department has provided an appropriate treatment plan, including whether the plan accounts for the particular problems facing both the parent and the child. *In re D.B.*, ¶ 32 (citation omitted). The State bears the burden of developing an appropriate treatment plan and must prove the appropriateness of a plan by clear and convincing evidence. *In re D.B.*, ¶ 33.

¶21    J.D. asserted at the hearing that her medical problems caused her to test positive for drugs during urinalysis and to miss testing sessions due to her condition. The State presented testimony and affidavits that verified that J.D.'s treatment plan accounted for the potential use of prescription medications and authorized J.D. to miss urinalysis appointments for verifiable reasons. The plan required documentation for prescribed medications. The court determined, however, that J.D. had tested positive for a number of drugs for which she did not have a prescription or otherwise verifiable documentation. The court also determined that J.D. had failed to validate or excuse many of her missed urinalysis appointments.

¶22    J.D.'s conduct also belied her claim that her medical conditions rendered the treatment plan inappropriate for her medical needs. J.D. had claimed that she had remained "stuck in a fetal position" due to pains from her medical condition. She asserted that her condition prevented her from making her appointments for urinalysis testing. The court noted that J.D. had provided only one doctor's note. The doctor had placed J.D. on a bed rest restriction for a finite period. The court also noted that authorities had arrested J.D.

8

outside her home for possession of drugs during the time period covered by the bed rest restriction.

¶23 The court also questioned J.D.'s allegations concerning the symptoms of her medical condition in light of her later conduct during a period when she had a verifiable illness. The court noted that J.D. had been able to comply with the urinalysis protocol, "when the Termination Hearing was looming," after she had contracted a legitimate illness in 2007. The District Court's extensive findings of fact and the testimony at the hearing support the court's conclusion that the Department's treatment plan in this case represented an appropriate plan for J.D.

¶24 J.D. claims that she did not receive a copy of the treatment plan until July of 2006. She contends that the court could gauge her compliance with the treatment plan only from events that took place after July of 2006. The District Court held a hearing for the approval of a treatment plan for J.D on April 21, 2006. J.D. attended the hearing. J.D. agreed to the proposed treatment plan at the hearing, and the District Court approved the plan in May of 2006. J.D. testified at the termination hearing that she had understood throughout her case that her treatment plan addressed her drug use, housing, and parenting skills.

¶25 Section 41-3-609(1)(f)(i), MCA, required the District Court to consider J.D.'s compliance with the treatment plan. The court addressed J.D.'s compliance with the treatment plan at length. The court's discussion of J.D.'s compliance cited some events that had taken place before the court had approved of J.D.'s treatment plan. These events had no relevance to J.D.'s compliance with the plan. The court documented numerous instances that

9

took place after the court's approval of the treatment plan, however, where J.D. had failed to comply with the plan.

¶26 The court noted, for example, that J.D. had failed to comply with the treatment plan's requirements that she participate in a urinalysis testing program, that she remain drug free, and that she provide the Department with documentation of any prescribed medications. J.D. regularly had failed to report to the testing provider and often would decline to appear for testing due to alleged illness.

¶27 Notwithstanding her alleged bed rest restrictions, J.D. had failed to report for urinalysis testing five times in June of 2006, and made no calls during August of 2006. J.D. had tested positive consistently during 2006 for marijuana. She also had tested positive for benzodiazepines and morphine. J.D. could provide no valid prescriptions or medical records authorizing her use of these drugs. The court also noted J.D.'s arrest in July of 2006 for drug possession.

¶28 The District Court further determined that J.D. had failed to maintain housing appropriate for her children as required by the treatment plan. J.D. had lost her housing in May of 2006 due to nonpayment of rent. The court determined that J.D. had failed to maintain appropriate housing for twelve of the fourteen months from the beginning of her treatment plan until the termination hearing. The District Court determined that J.D. had failed to comply with her treatment plan in light of these findings.

¶29 The District Court also had to address whether the conduct that had rendered J.D. unfit as a parent likely would remain unchanged. Section 41-3-609(1)(f)(ii), MCA. The

10

statute requires the court to consider, among other factors, the parent's emotional illnesses, history of violent behavior, and excessive use of a narcotic or dangerous drug that affects the parent's ability to care and provide for the child. Section 41-3-609(2), MCA. The District Court determined that J.D. likely would not change the conduct that had rendered her unfit as a parent.

¶30 The District Court based its determination on J.D.'s pattern of drug use and poor choices revealed at the termination hearing. J.D. became addicted to drugs at the age of seventeen. The Department removed J.D.'s children from her care on three different occasions. The Department's removals mirrored J.D.'s periods of sobriety and relapse. The removal of her children did not prompt J.D. to refrain from her drug use and poor associations during those periods when she had regained physical custody of the children. J.D. had a history of knowingly resuming abusive relationships that endangered both J.D. and her children.

¶31 J.D. failed to secure appropriate housing for her children from May of 2006 until two months before the termination hearing. She had failed to arrange for urinalysis testing until six weeks before the termination hearing. The court found that J.D. had admitted that she had acquired the appropriate housing and urinalysis testing "specifically in preparation for the Termination Hearing--not for the benefit of her children." Substantial evidence supported the court's finding that J.D.'s conduct likely would not change. We conclude that the District Court did not abuse its discretion when it terminated J.D.'s parental rights.

¶32 Affirmed.

11

/S/ BRIAN MORRIS


We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE