FILED

September 25 2007

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 07-0164

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2007 MT 246

IN THE MATTER OF

D.B. and D.B.,

    Youths In Need Of Care.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DN 04-55,
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Jim Wheelis, Chief Appellate Defender; Roberta R. Zenker,
Assistant Appellate Defender, Helena, Montana

    For Respondent:

        Honorable Mike McGrath, Attorney General; C. Mark Fowler,
Assistant Attorney General, Helena, Montana

        Fred R. VanValkenburg, County Attorney; Diane Conner,
Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  August 29, 2007

Decided:  September 25, 2007

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     C.B., mother of D.B. and D.B., appeals the Fourth Judicial District Court's order terminating her parental rights. We reverse and remand for further proceedings.

¶2     We restate the issues as follows:

¶3     I. Did the District Court apply the correct statutory criteria in terminating C.B.'s parental rights?

¶4     II. What are the proper statutory criteria to be applied on remand?

## BACKGROUND

¶5     C.B. and her children first became involved with the Department of Public Health and Human Services, Child and Family Services (CFS) on a voluntary basis, due to C.B.'s entanglement with drugs and an abusive boyfriend. Several months later, CFS removed the children from C.B.'s home based on a tip that she was planning to flee the state with them. C.B. subsequently entered into a rehabilitation program at the Montana Chemical Dependency Center (MCDC), which she did not successfully complete.

¶6     CFS submitted a petition for adjudication that the children were youths in need of care and temporary legal custody (TLC). C.B. stipulated to the petition, and the District Court approved it without a hearing. The children were removed from their first foster home and placed with C.B.'s maternal relatives. C.B. voluntarily began to get treatment and therapy, though no formal court-approved treatment plan was in place. The court-appointed special advocate (CASA) recommended increased, unsupervised visitation for C.B. All parties were working towards the goal of reunification.

2

¶7 Regrettably, before that reunification could occur, C.B. was incarcerated again for a parole violation. C.B. was sentenced to seven months in prison for driving without liability insurance. C.B.'s maternal relatives could no longer care for the children, and CFS placed them with a foster family seeking to adopt.

¶8 Eight months after first removing the children from their home, CFS finally presented a treatment plan for C.B. to the District Court. The plan contained no less than six primary goals and twenty-two tasks and subtasks. The plan did not contain any timelines or deadlines. Each task was scheduled to start "immediately," and where an expected and actual completion date should have been listed, each task was simply classified as "ongoing."

¶9 C.B. objected to the plan on the grounds that it required her to undergo a neuropsychological evaluation. C.B. later withdrew this objection, and stipulated to the treatment plan. The District Court approved the treatment plan in December 2005.

¶10 C.B. was released from prison shortly after, and began work on the court-ordered treatment plan. At a meeting with CFS in February, C.B.'s attorney raised concerns about C.B.'s ability to complete the complicated plan without more assistance from CFS.

¶11 Dr. Jacqueline Day examined C.B. in March. Following the exam, but before Dr. Day issued her report, a hearing was held on CFS's petition to extend TLC of the children. At the hearing, C.B. objected that that a number of the tasks required by CFS were unreasonable.

¶12 Dr. Day finally issued her report in April. Dr. Day diagnosed C.B. with mild to moderate cerebral dysfunction. As a result of this dysfunction, C.B. has severe deficits in

vocabulary and auditory learning skills, and milder deficits in visual learning and interpretation of social cues. Dr. Day also reported that C.B. suffers from verbally-based learning disabilities, and has the reading comprehension skills of a fifth grader. Additionally, C.B. was diagnosed with post-traumatic stress disorder, and paranoid and schizoid personality traits.

¶13 Dr. Day recommended additional services that CFS could provide to C.B. to address her individual needs. She specifically advised that C.B. would be more successful if CFS provided her with written instructions, checklists, and reminders. Following Dr. Day's diagnosis of C.B.'s cognitive disabilities, no alteration was made to the treatment plan.

¶14 In July 2006, less than six months after the treatment plan was approved by the District Court, CFS filed a petition to terminate C.B.'s parental rights, and award CFS permanent legal custody with the right to consent to adoption.

¶15 Four months later, the District Court conducted a hearing on the petition for termination of parental custody. In a post-hearing brief, C.B. again raised her objection that the treatment plan was too onerous, and that CFS did not provide her with adequate support. On December 28, 2006, the District Court issued an order terminating C.B.'s parental custody. It is from this order which she appeals.

**STANDARD OF REVIEW**

¶16 We review a district court's decision to terminate parental rights to determine whether the district court abused its discretion. *In re K.J.B.*, 2007 MT 216, ¶ 22, ___ Mont. ____, ¶ 22, ___ P.3d ____, ¶ 22. In reviewing for abuse of discretion, we consider

4

"whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice." *In re K.J.B.*, ¶ 22 (internal citations omitted).

¶17 A parent's right to the care and custody of a child is a fundamental liberty interest which must be protected by fundamentally fair procedures. *In re K.J.B.*, ¶ 22. *See also In re A.T.*, 2003 MT 154, ¶ 10, 316 Mont. 255, ¶ 10, 70 P.3d 1247, ¶ 10 (internal citations omitted). Thus, "before terminating an individual's parental rights, a district court must adequately address each applicable statutory requirement." *In re A.T.*, ¶ 10.

¶18 In order to satisfy these statutory requirements, the district court must make specific factual findings. *In re K.J.B.*, ¶ 23. We review these findings of fact to determine whether they are clearly erroneous. *In re K.J.B.*, ¶ 23. We review the district court's conclusions of law to determine whether they are correct. *In re K.J.B.*, ¶ 23. Finally, the party seeking to terminate parental rights must prove by clear and convincing evidence that the statutory criteria for termination have been met. *In re A.T.*, ¶ 10.

## DISCUSSION

¶19 **I. Did the District Court apply the correct statutory criteria in terminating C.B.'s parental rights?**

¶20 Since the children were adjudicated youths in need of care, § 41-3-609(1)(f), MCA, provides the necessary criteria for terminating the parent-child relationship in the instant case:

> (1) The court may order a termination of the parent-child legal relationship upon a finding established by clear and convincing evidence [that] . . . .
> (f) the child is an adjudicated youth in need of care and both of the following exist:

5

(i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and

(ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

¶21 The District Court cited § 41-3-609(1)(f), MCA, in its opinion, but failed to make the specific factual findings required by the statute: namely, that C.B. did not comply with an appropriate treatment plan, and that her conduct or condition was unlikely to change within a reasonable time. Instead of applying § 41-3-609(1)(f), MCA, the District Court relied on the legal presumption that termination is appropriate:

> After considering all of the evidence in this case, as summarized above, the Court finds that it is uncontroverted that the children need permanency, and soon. There is a legal presumption that termination is appropriate in cases where children have been in foster care of [sic] 15 of the last 22 months. There is insufficient evidence here to rebut that presumption. To the contrary the clear and convincing evidence directs a finding that it is in the best interest of the children to accomplish permanency by terminating [C.B.'s] parental rights and freeing the children for adoption by the Bates'. The Court finds that the department has made reasonable efforts to accomplish alternatives, but that these efforts have been continually frustrated by [C.B.'s] inability to follow through. Almost all of [C.B.'s] failures were caused by cognitive and psychological problems that are not her fault and might be overcome by long term therapy and massive outside support for [C.B.]. Tragically, the children cannot wait to find out if these goals can ever be accomplished.

¶22 Section 41-3-604, MCA, provides that when a child has been in foster care for fifteen of the last twenty-two months, "the best interests of the child must be presumed to be served by termination of parental rights." Section 41-3-604, MCA. However, the procedures by which parental rights are terminated are governed by § 41-3-609, MCA, not § 41-3-604, MCA.

¶23 We have held that "the presumption in § 41-3-604(1), MCA, neither eliminates the substantive requirements of § 41-3-609, MCA, nor diminishes the clear and convincing

6

burden of proof on the party seeking termination of parental rights." *In re B.H.,* 2001 MT 288, ¶ 29, 307 Mont. 412, ¶ 29, 37 P.3d 736, ¶ 29. Here, the presumption in favor of termination applies, but it does not excuse the District Court from making the specific statutory findings required by § 41-3-609, MCA, or relieve the State from meeting its high burden of proof.

¶24 The District Court's reliance on this presumption impermissibly shifted the burden of proof to C.B. It is well-established that the party seeking termination bears the burden of proof to show by clear and convincing evidence that the statutory criteria for termination are satisfied. *See e.g. In re B.H.,* ¶ 16 (internal citations omitted). Yet the Court effectively shifted that burden from the State to C.B. by concluding that there was "insufficient evidence here to rebut that presumption." It was not C.B.'s duty to rebut the presumption, but rather the State's duty to show by clear and convincing evidence that C.B. failed to complete an appropriate treatment plan, and that C.B.'s conduct or condition was unlikely to change within a reasonable time.

¶25 The District Court's factual findings do not specifically address whether the treatment plan was appropriate, whether C.B. completed the treatment plan, or whether her condition was unlikely to change within a reasonable time. Instead, the District Court's factual findings are centered on whether CFS made "reasonable efforts to accomplish alternatives." Under § 41-3-423, MCA, the "reasonable efforts" inquiry is relevant to abuse and neglect proceedings, in preventing the removal of a child or in working towards reunification of a family separated by the state. While the question of whether CFS did or did not make reasonable efforts may be relevant in the instant case, it

does not replace the two-prong statutory inquiry mandated by § 41-3-609(1)(f), MCA. Similarly, it does not relieve the State from meeting its burden of proof, as discussed above.

¶26   Because a parent's right to custody of her children is fundamental, it must be protected by fundamentally fair procedures. *In re K.J.B.*, ¶ 22. In the instant case, those procedural safeguards are found in § 41-3-609(1)(f), MCA. Thus, the district court must adequately address each statutory requirement by making specific factual findings. *In re A.T.*, ¶ 10; *In re K.J.B.*, ¶ 23. Here the District Court failed to make specific findings under either § 41-3-609(1)(f)(i) or (ii), MCA. Instead, the District Court improperly relied on the § 41-3-604(1), MCA, presumption in favor of termination and the finding that the State had made reasonable efforts under § 41-3-423, MCA.

¶27   We conclude that the District Court erred by applying the wrong statutory standards to assess whether C.B.'s parental rights should be terminated. Thus, the District Court's order terminating C.B.'s parental rights must be reversed, so that the proper statutory criteria may be applied and considered on remand.

¶28   **II. What are the proper statutory criteria to be applied on remand?**

¶29    Before parental rights can be terminated, the State must present clear and convincing evidence that the parent failed to comply or failed to succeed at an appropriate, court-ordered treatment plan, and that the conduct or condition rendering the parent unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA. "In the context of termination of parental rights cases, we have defined clear and convincing evidence as simply a requirement that a preponderance of the evidence be

8

definite, clear, and convincing, or that a particular issue must be clearly established by a preponderance of the evidence or by a clear preponderance of proof." *In re F.M.*, 2002 MT 180, ¶ 48, 311 Mont. 35, ¶ 48, 53 P.3d 368, ¶ 48 (internal citations omitted). To provide the district courts with explicit guidance in applying the statutory criteria set out in § 41-3-609(1)(f), MCA, we discuss each prong of the test individually below.

¶30    A.  First prong: compliance with an appropriate treatment plan

¶31    Section 41-3-609(1)(f)(i), MCA, directs the court to consider whether "an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful."  Thus, the first determination the court must make is whether there is an "appropriate" treatment plan in place.

¶32    This Court has rejected any single, generalized definition of an "appropriate" treatment plan, "because no bright line definition is possible in light of the unique circumstances of each case." *In re A.N.*, 2000 MT 35, ¶ 26,  298 Mont. 237, ¶ 26, 995 P.2d 427, ¶ 26.  Instead, we consider a number of factors including: whether the parent was represented by counsel, whether the parent stipulated to the plan, and whether the plan "takes into consideration the particular problems facing both the parent and the child." *In re A.N.,* ¶¶ 26-27.  *See also In re A.A.*, 2005 MT 119, ¶ 21, 327 Mont. 127, ¶ 21, 112 P.3d 993, ¶ 21.  Even if the parent is represented by counsel and stipulates to the plan, these two factors alone do not establish that the plan was appropriate. *Matter of Custody and Parental Rights of M.M.*, 271 Mont. 52, 57, 894 P.2d 298, 301 (1995).

¶33    The law places the burden on the State—not the parent—to prove that the treatment plan is appropriate by clear and convincing evidence. *In re A.N.*, ¶ 24.  Further,

9

the State has a duty to act in good faith in developing and executing a treatment plan to preserve the parent-child relationship and the family unit. *In re A.A.*, ¶ 20; *In re A.T.*, ¶¶ 21, 24. The State's burden to ensure appropriateness and duty to act in good faith does not end once the court has approved a treatment plan.

¶34    Where the case involves a disabled parent or child, it is especially important to determine whether the plan "takes into consideration the particular problems facing both the parent and the child." *In re A.N.,* ¶ 27. While each case is unique, we have held that treatment plans must be customized to meet the needs of disabled parents. For example, in *In re J.B.K.*, CFS specifically took the mother's disability into account in administering the treatment plan. 2004 MT 202, ¶ 28, 322 Mont. 286, ¶ 28, 95 P.3d 699, ¶ 28. CFS recommended that the mother repeat classes to ensure she retained the information, and enrolled her in a special needs parenting program where she received one-on-one instruction tailored to her individual abilities. *In re J.B.K.*, ¶ 28. In another case, CFS recommended that the parents undergo psychiatric evaluations before the plan was developed, so it could be tailored to fit their needs. *In re K.J.B.*, ¶ 5.

¶35    The fact that a parent is not diagnosed with a disability until after the plan is in place is not necessarily fatal. In *Custody of M.M.*, we held that a treatment plan was appropriate for a father, even though it was written before his limited mental capacity was diagnosed. 271 Mont. at 60, 894 P.2d at 303. In that case the father's social workers and service providers testified that they were aware of his special needs, and adjusted the plan to meet them. *Custody of M.M.*, 271 Mont. at 58, 894 P.2d at 302. There must be clear and convincing evidence which shows that the plan either anticipated the disabled

parent's or child's special needs or was modified to address the special needs after they were diagnosed.

¶36 In weighing the appropriateness of a treatment plan, the courts must also inquire whether the plan contains reasonable timelines or deadlines. While each treatment plan is different, our review of cases over the years indicates that most treatment plans are divided into multiple phases of a specific duration, and that the tasks are assigned specific deadlines. *See e.g. In re J.W.*, 2001 MT 86, ¶ 11, 305 Mont. 149, ¶ 11, 23 P.3d 916, ¶ 11 (specifying four goals to be completed within a six-month period); *In re A.N.*, ¶¶ 14, 17, 19 (consisting of three successive phases, each lasting ninety days, each with a progressively increasing number of goals and tasks); *In re A.T., ¶* 19 (identifying three goals and seven tasks for the father to complete within six months).

¶37 The lack of deadlines in any treatment plan gives CFS a great deal of unchecked discretion in determining whether the parent has satisfactorily complied with the plan. In light of the fundamental liberty interest a parent has in the custody of their children, due process requires the inclusion of a timeline for completion of goals and tasks in a treatment plan. Where a parent suffers from a disability, CFS has a special duty to assist him or her in prioritizing and scheduling the tasks.

¶38 <u>B. Second prong: conduct or condition unlikely to change within a reasonable time</u>

¶39 Next, the District Court must evaluate whether the parent's conduct or condition rendering them unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f)(ii), MCA. Section 41-3-609(2), MCA, provides the courts with guidance in applying the second prong of the test:

11

(2) In determining whether the conduct or condition of the parents is unlikely to change within a reasonable time, the court shall enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care. In making the determinations, the court shall consider but is not limited to the following:

(a) emotional illness, mental illness, or mental deficiency of the parent of a duration or nature as to render the parent unlikely to care for the ongoing physical, mental, and emotional needs of the child within a reasonable time;

(b) a history of violent behavior by the parent;

(c) excessive use of intoxicating liquor or of a narcotic or dangerous drug that affects the parent's ability to care and provide for the child; and

(d) present judicially ordered long-term confinement of the parent.

¶40 At this stage of the inquiry, the District Court may properly take the statutory presumption favoring termination into consideration. Section 41-3-609(3), MCA, provides that "[i]n considering any of the factors in subsection (2) in terminating the parent-child relationship, the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child." Section 41-3-604, MCA, provides that when a child has been in foster care for fifteen of the last twenty-two months, "the best interests of the child must be presumed to be served by termination of parental rights." Section 41-3-604, MCA. Thus, since the children here had been in foster care for more than fifteen of the last twenty-two months, the District Court properly found that the children's best interest outweighed the likelihood that C.B. would change within a reasonable amount of time. As stated above, however, that presumption alone is not a sufficient basis to terminate parental rights.

**CONCLUSION**

¶41 We hold that the District Court did not apply the correct statutory criteria required by § 41-3-609(1)(f), MCA, when it terminated C.B.'s parental rights. The District Court

should have inquired whether the State had shown by clear and convincing evidence: (1) that C.B. failed to comply or succeed with an appropriate, court-ordered treatment plan, and (2) that her conduct rendering her an unfit parent was unlikely to change within a reasonable time. We reverse the District Court's order terminating C.B.'s parental rights and remand the case for application of the proper criteria set forth in § 41-3-609(1)(f), MCA. In determining whether C.B.'s plan was appropriate, the District Court must take into consideration whether the plan adequately addressed C.B.'s disabilities by, among other things, setting reasonable deadlines and providing her with the support required by law.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS