FILED

January 29 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 07-0513

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2008 MT 22N

IN THE MATTER OF

M.M. and R.M.,

Youths In Need Of Care.

FILED

JAN 2 9 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause Nos. DN-06-04C, DN-06-05C
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Jim Wheelis, Chief Appellate Defender; Lisa S. Korchinski,
Assistant Appellate Defender, Helena, Montana

For Appellee:

Hon. Mike McGrath, Attorney General; Tammy K. Plubell, Assistant
Attorney General, Helena, Montana

Marty Lambert, Gallatin County Attorney; Kimberly Dudik,
Deputy County Attorney, Bozeman, Montana

Submitted on Briefs: January 4, 2008

Decided: January 29, 2008

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 D.M. appeals from the order entered by the Eighteenth Judicial District Court, Gallatin County, terminating his parental rights to M.M. and R.M. upon determining he had failed to successfully complete a stipulated and court-approved treatment plan, and it was unlikely that his condition or conduct would change within a reasonable time. On appeal, D.M. relies on *In re D.B.*, 2007 MT 246, 339 Mont. 240, 168 P.3d 691, for the proposition that the State of Montana has the burden of proving it met its duty to act in good faith in developing and executing an appropriate treatment plan, and that duty does not end once the district court has approved the treatment plan. *See In re D.B.*, ¶ 30. He also highlights our observation in *In re D.B.*, ¶ 36, that most treatment plans are divided into multiple phases of a specific duration with specific deadlines assigned to tasks. Finally, he relies on the following language from *In re D.B.*:

> The lack of deadlines in any treatment plan gives [the State] a great deal of unchecked discretion in determining whether the parent has satisfactorily complied with the plan. In light of the fundamental liberty interest a parent has in the custody of their [sic] children, due process requires the inclusion of a timeline for completion of goals and tasks in a treatment plan.

*In re D.B.*, ¶ 37. In reply to the State's argument that *In re D.B.* concerned a parent with disabilities, D.M. concedes he does not have disabilities, but maintains *In re D.B.* does not limit the foregoing principles regarding the State's duty of good faith to cases involving parents with disabilities.

¶3    D.M. asserts the treatment plan—which was stipulated and approved before D.M. had undergone any evaluations of his need for chemical dependency treatment—did not set deadlines for chemical dependency treatment and other tasks. He also argues the social worker did not act in good faith by failing to: (1) tell D.M. that being sober would be a prerequisite to successfully completing some other tasks; (2) prioritize inpatient treatment for D.M. over his pregnant and homeless spouse (R.M.'s birth mother), in relation to a facility rule prohibiting simultaneous inpatient treatment of spouses; (3) refer D.M. to an outpatient chemical dependency treatment program, although they had discussed a problem with transportation that apparently related to D.M.'s move to a community with no outpatient treatment programs and his lack of a driver's license; (4) inform D.M., after losing contact with him, that the inpatient treatment facility had closed his file because it had not received necessary medical records; (5) provide D.M. with a second referral to anger management classes after D.M. learned the initially-referred program no longer offered the classes; (6) prioritize parenting classes for D.M. over R.M.'s birth mother, although D.M. never enrolled in a parenting class at any time; and (7) advise D.M. that clarifying his legal status—as recommended in his neuropsychological evaluation—by serving an out-of-state parole violation sentence and pleading guilty in a Montana criminal proceeding would result in a "Catch-22" in that he

2

could not complete other aspects of his treatment plan in the allotted six months. D.M. does not contest the District Court's findings that he did not successfully complete several other treatment plan tasks, which included maintaining requisite contact with the Department of Public Health and Human Services, establishing a stable home, avoiding criminal conduct and verifying lawful employment.

¶4    We have determined to decide this case pursuant to Section I, Paragraph 3(d), of our 1996 Internal Operating Rules, as amended in 2003, which provides for memorandum opinions. It is manifest on the face of the briefs and the record that this appeal is without merit because the pertinent legal issues are clearly controlled by settled Montana law that the District Court correctly interpreted, sufficient evidence clearly supports the District Court's findings of fact, and the District Court clearly did not abuse its discretion in terminating D.M.'s parental rights.

¶5    Affirmed.

_____
                Chief Justice

We concur:

_____

_____

_____

_____
                Justices

3