

DA 09-0106; DA 09-0107

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 279N

IN THE MATTER OF

B.L. and C.T.,

     Youths in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause Nos. BDJ-08-0102-Y and
BDJ-08-228-Y
Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Jim Wheelis, Chief Appellate Defender; Koan Mercer, Assistant Appellate
Defender, Helena, Montana

    For Appellee:

        Hon. Steve Bullock, Montana Attorney General; Matthew T. Cochenour,
Assistant Attorney General, Helena, Montana

        John Parker, Cascade County Attorney, Great Falls, Montana

             Submitted on Briefs:  July 15, 2009

                    Decided:  August 24, 2009

Filed:

      _____
                   Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Mother appeals the District Court's order terminating her parental rights to B.L. and C.T. We affirm.

¶3 The Department of Public Health and Human Services (Department) earlier had terminated mother's rights to three other children based upon allegations that mother had exposed them to a sex offender who currently is incarcerated for child pornography. The Department placed B.L. in foster care after mother allowed B.L. to have unsupervised contact with B.L.'s father, a registered sex offender. The Department specifically instructed mother not to allow B.L. to have any contact with her father.

¶4 The Department learned on April 18, 2008, that Phillip Pyne, a registered sex offender, was having contact with B.L. A child protection specialist for the Department went to B.L.'s house and encountered Pyne outside the residence. Mother was asleep inside the house at the time. Mother admitted to the Department that she knew Pyne was a sex offender, but she contended that she was not concerned about Pyne having contact with B.L. and had "no problem" with him sleeping unsupervised in the same room as B.L. The

2

Department placed B.L. in protective custody based on mother's lack of concern regarding Pyne's conduct with B.L. and the mother's prior history associated with sex offenders.

¶5 B.L. told the Department that she slept in a "big bed" in the living room and that Pyne slept on the couch in the living room when Pyne slept at mother's house. B.L. further informed the Department that she slept poorly on those occasions because Pyne "keeps trying to put his hand in my underwear." B.L. informed the Department that Pyne had succeeded in getting his hand in her underwear. When B.L. told her mother what had happened, mother responded only by stating that Pyne was a "crackhead."

¶6 The Department filed a petition for emergency protective services, adjudication as a youth in need of care, and temporary legal custody of B.L. Mother stipulated that B.L. was a youth in need of care and the court adjudicated B.L. as a youth in need of care. Mother further stipulated that the State should have temporary legal custody of B.L. and mother stipulated to a treatment plan.

¶7 The treatment plan called for mother to get counseling to raise her level of self-esteem and increase her ability to protect herself and her children from sex offenders. Mother had been an abuse victim herself as a child. The Department did not provide the counseling services and mother failed to get them on her own. The Department eventually sought to terminate mother's parental rights to B.L., and to her newborn son, C.T., and the court granted the request. Mother appeals.

¶8 Mother argues on appeal that the Department failed to make reasonable efforts at reunification when it did not provide her with the required counseling. Mother further

3

contends that the District Court erred when it allowed the Department to file a petition for termination and then proceed directly to termination without the State having requested or proven that reunification services need not be provided. Mother further argues that the District Court erred when it terminated her parental rights to her newborn son based upon its findings that she had not completed a treatment plan that was court ordered in a separate case five months before the newborn's birth. Mother raises these last two issues for the first time on appeal and asks the Court to review them under our plain error standard. We decline.

¶9 We review for an abuse of discretion a district court's decision to terminate parental rights. *In re D.B.*, 2007 MT 246, ¶ 16, 339 Mont. 240, 168 P.3d 691. The court abuses its discretion when it acts arbitrarily, without conscientious judgment, or when it exceeds the bounds of reason and causes substantial injustice. *In re D.B.*, ¶ 16. We review a district court's findings of fact for clear error and a court's conclusions of law for correctness. *In re D.B.*, ¶ 18. We have determined to decide this case pursuant to Section I, Paragraph 3(d), of our 1996 Internal Operating Rules, as amended in 2003, that provide for memorandum opinions. It is manifest on the face of the briefs and record before us that substantial evidence supports the District Court's findings of fact and that the District Court's legal conclusions were correct.

¶10 We affirm.

/S/ BRIAN MORRIS

We Concur:

4

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ JAMES C. NELSON