DA 13-0630

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 87N

IN THE MATTER OF:

C.V.1 and C.V.2,

    Youths in Need of Care.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DN 12-56
Honorable Edward P. McLean, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Lucy Hansen, Attorney at Law, Missoula, Montana

    For Appellee:

        Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman, Assistant Attorney General; Helena, Montana

        Fred R. Van Valkenburg, Missoula County Attorney, Matthew Lowy, Deputy County Attorney; Missoula, Montana

Submitted on Briefs:  March 12, 2014
Decided:  April 1, 2014

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 T.V. appeals from the Orders of the Fourth Judicial District Court, Missoula County, terminating her parental rights to her two children, C.V.1 and C.V.2. We affirm.

¶3 On July 7, 2012, Centralized Intake (CI), part of Child and Family Services (CFS), received a report of physical neglect of an "unknown Missoula" family. The concern was that the children were very thin, had rotten teeth, and had subsisted on cake for the past three days. The children were reported to have very poor hygiene and were consistently wearing dirty clothes. One of the children had a large lump on his neck. The report stated that the home the children were living in had no furniture and the children slept on the floor on dirty blankets. It also stated that the family lived a transient lifestyle, as the mother habitually met men on the internet and moved with her children to and from these men's homes.

¶4 On July 8, 2012, CI reported to CFS that the unknown family had been identified by law enforcement after receiving a request for a welfare check on the children. When law enforcement arrived at the home, they found C.V.1., then aged six or seven, riding bicycles with a friend. C.V.1 stated he did not know where his mother was. When his mother, T.V., finally returned home, she claimed she had gone shopping with C.V.2 and had left C.V.1 under the supervision of another adult for no more than thirty minutes—a statement that

2

seemed improbable in light of facts subsequently disclosed. Law enforcement arrested T.V. for numerous warrants and for endangering the welfare of a child.

¶5 When CFS arrived at the home to assess the situation, the worker was "not prepared for the extreme nature of slovenly home environment and the level of the severe neglect of the children." The home had virtually no furniture and all the windows closed. The home was sweltering. There was very little food in the apartment. Because T.V. had been taken to jail, CFS spoke with the adult resident, a man who went by "Aziz." Aziz made a series of untrustworthy statements to police regarding to whom the housing belonged, why the apartment was in such poor condition, and how T.V. and the children had come to be there. Aziz confirmed that the children slept on the floor in blankets. He announced his intention to return to his home in Saudi Arabia immediately. CFS removed the children from the home.

¶6 The caseworker observed that C.V.1 was unable to say what his full name was, where he lived, and where he went to school. C.V.1 also seemed to lack focus, ability to answer questions and comprehension. Neither child appeared concerned about T.V.'s absence. The caseworker determined that C.V.1 likely has special needs and that both children appeared to exhibit reactive attachment disorder. In addition, the caseworker verified that the two children had rotten teeth and that one of the children had a lump on his neck.

¶7 Further investigation revealed that CFS had received thirteen reports on T.V. and her family since 2007. The caseworker's report observed "[T.V.] has a history through CFS of allegations of prostitution." In a cell phone T.V. informed CFS that C.V. had, the caseworker read messages T.V. had sent that stated she had cancer, was pregnant and had

3

overdosed on painkillers. There was also a message that read: "hey its Christina 3 more days in missoula special 200 all night full service guys xoxoxs."

¶8 Based on these facts, as well as the fact that T.V. was in jail and would be homeless upon release, the CFS caseworker's report concluded "[n]o reasonable efforts to keep the children in their mother's care were feasible."

¶9 On July 12, 2012, the State filed a Petition for Emergency Protective Services, Adjudication as a Youth In Need of Care and Temporary Legal Custody (TLC). Over the course of the proceedings that followed, T.V. failed to appear at many hearings and made many misrepresentations to the court regarding her retention of private counsel, marital status, residence and employment. While the State attempted to sift through T.V.'s representations, C.V.1 and C.V.2 stayed at a short-term shelter—for six months. The State began efforts to find placement for C.V.1 and C.V.2. T.V.'s pattern of chronic lying and failing to disclose information significantly slowed the proceedings. Partly because of this pattern, a treatment plan was not court-approved until March 27, 2013. Ultimately, on June 12, 2013, the State petitioned for termination of parental rights on the grounds that T.V. had failed to complete a court-ordered treatment plan; and that aggravated circumstances of chronic, severe neglect of her children existed. On August 22, 2013, the District Court involuntarily terminated T.V.'s parental rights, in part, because reasonable efforts at reunification were not required as aggravated circumstances existed. T.V. appeals.

¶10 We review a district court's decision to terminate parental rights for an abuse of discretion. *See In re M.N.*, 2011 MT 245, ¶ 14, 362 Mont. 186, 261 P.3d 1047.

4

¶11 T.V. argues on appeal that: (1) The State did not act in good faith when it set the treatment plan in place because she did not have time to complete the plan; (2) the State failed to establish that T.V.'s conduct making her unfit could not change within a reasonable amount of time; and (3) the State did not defer to the children's best interests when it sought to terminate T.V.'s parental rights after a "mere" ten months. We disagree.

¶12 Section 41-3-609, MCA, sets forth criteria for termination of parental rights. Generally, a court may order termination of the parent-child relationship if the child is a YINC and both of the following exist: (1) The parent has not complied with an appropriate, court-approved treatment plan, and (2) the conduct or condition rendering the parent unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA. Alternatively, a court may order termination of the parent-child relationship if it finds that the parent has subjected the child to aggravated circumstances, including chronic abuse and chronic, severe neglect. Sections 41-3-609(1)(d), -423(2)(a)-(e), MCA.

¶13 Section 41-3-609(1)(d), MCA, provides that when aggravated circumstances, such as chronic abuse and severe neglect, exist, a court may order termination of parental rights regardless of whether a treatment plan exists and has been complied with, or whether the parent's condition is likely to change. Although the District Court based its conclusions on the § 41-3-609(1)(f), MCA, criteria, it also noted that aggravated circumstances existed and cited § 41-3-609(1)(d), MCA. The District Court found that "[b]ecause of [T.V.'s] inability to comply or work with others, the Court finds there to be no treatment plan for [T.V.] that would be completed in compliance with [§§ 41-3-609(1)(d) and (4)(a), MCA]." In addition, the court noted, "[T.V.]'s conduct or condition renders her unfit, unable or unwilling to

5

provide adequate parental care to [her children] . . . [and] is unlikely to change within a reasonable time." The court also found that "[T.V.]'s chronic, severe neglect of these children has resulted in significant psychological harm, insignificant nutrition, maladaptive social behaviors, and extraordinary dental work that can only be caused by chronic, severe neglect." T.V. did not raise any argument directed at the aggravated circumstances statutory provisions on appeal. Because aggravated circumstances existed, the existence or adequacy of a treatment plan and likelihood of change were not necessary considerations to the court's determination—although we conclude the court did not abuse its discretion in determining that T.V. had not complied with the treatment plan and her unfitness was unlikely to change. We conclude that the District Court went above and beyond what the statute required in resolving this matter.

¶14 Nor is this Court persuaded that the District Court failed to consider C.V.1 and C.V.2's best interests when it terminated parental rights after ten months of separation from T.V. T.V. relies on § 41-3-604, MCA, to argue that the timeframe for the termination was not reasonable. That section, as the State points out, sets forth conditions that require the Department to file a petition to terminate, but does not limit how early such a petition may be filed. Moreover, since the circumstances under which a petition must be filed include "if the court has found that reasonable efforts to preserve or reunify a child with the child's parent or guardian are not required pursuant to 41-3-423," the statute as applied here required the Department to file a petition to terminate. We have observed, however, that "the procedures by which parental rights are terminated are governed by § 41-3-609, MCA, not § 41-3-604, MCA." *In re D.B.*, 2007 MT 246, ¶ 22, 339 Mont. 240, 168 P.3d 691.

¶15 Section 41-3-609(1), MCA, permits termination where a court finds the circumstances set forth in that section are satisfied. The statute vested the court with the discretion to terminate T.V.'s parental rights where aggravated circumstances existed. *See* § 41-3-609(1)(d), MCA. The court determined that aggravated circumstances existed as provided in § 41-3-423, MCA, because T.V. had exposed the children to chronic, severe neglect. Considering that T.V. had proven herself incapable of providing for her children's most basic medical and nutritional needs, we conclude that the District Court adequately considered C.V.1 and C.V.2's best interests when it made that determination. The District Court did not abuse its discretion when it terminated T.V.'s parental rights.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The issues in this case are ones of judicial discretion and there clearly was not an abuse of discretion.

¶17 Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ LAURIE McKINNON