

FILED

07/26/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0755

DA 15-0755

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 182N

IN THE MATTER OF:

A.S.,

        A Youth in Need of Care.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DDN 2013-39
Honorable James P. Reynolds, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Shannon Hathaway, Montana Legal Justice, PLLC, Missoula, Montana

        For Appellee:

        Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Assistant
Attorney General, Helena, Montana

        Leo Gallagher, Lewis and Clark County Attorney, Helena, Montana

Submitted on Briefs:  June 29, 2016

Decided:  July 26, 2016

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 T.R. appeals the findings of fact, conclusions of law, and order of the First Judicial District Court, Lewis and Clark County, terminating her parental rights to her daughter, A.S. We address whether the District Court abused its discretion in terminating T.R.'s parental rights. We affirm.

¶3 On July 22, 2013, T.R. was arrested, incarcerated, and charged with three counts of child endangerment and two counts of possession of drug paraphernalia. On July 29, 2013, the Department of Health and Human Services, Child and Family Services Division (Department) filed a petition for emergency protective services, adjudication as a youth in need of care, temporary investigative authority, and temporary legal custody of A.S. The attached affidavit, signed by Child Protective Specialist (CPS) Angi Rayfield, indicated that the Department had "numerous concerns" that T.R. lacked supervision over A.S. and her two other minor children, M.R. and F.R. These concerns were based on several reports filed with the Department between March 14, 2013, and T.R.'s arrest on July 22, 2013. On September 12, 2013, A.S. was adjudicated as a youth in need of care. On December 12, 2013, the District Court approved T.R.'s treatment plan.

¶4 After obtaining two extensions of temporary legal custody, on March 4, 2015, the Department filed a petition to terminate T.R.'s parental rights to A.S. On June 9 and September 3, 2015, the District Court held a termination hearing, during which it heard testimony from various social workers with experience working with T.R. and her children. On November 16, 2015, the District Court granted the Department's petition to terminate T.R.'s parental rights to A.S.

¶5 We review a district court's decision to terminate parental rights for abuse of discretion. *In re A.K.*, 2015 MT 116, ¶ 20, 379 Mont. 41, 347 P.3d 711. We review a district court's factual findings for clear error. *A.K.*, ¶ 20. Pursuant to § 41-3-609(1)(f), MCA, a court may terminate parental rights if it finds, by "clear and convincing evidence," that:

> [T]he child is an adjudicated youth in need of care and both of the following exist: (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

Clear and convincing evidence is "simply a requirement that a preponderance of the evidence be definite, clear, and convincing, or that a particular issue must be clearly established by a preponderance of the evidence or by a clear preponderance of proof." *In re D.B.*, 2007 MT 246, ¶ 29, 339 Mont. 240, 169 P.3d 691 (citation omitted). "It does not call for unanswerable or conclusive evidence." *A.K.*, ¶ 22 (quoting *In re J.M.W.E.H.*, 1998 MT 18, ¶ 33, 287 Mont. 239, 954 P.2d 26) (internal quotation marks omitted).

¶6 T.R. contends that the District Court abused its discretion in terminating her parental rights to A.S. because, she alleges, the Department did not demonstrate by clear

and convincing evidence that the conduct or condition rendering her unfit to parent was unlikely to change within a reasonable time. We disagree.

¶7    Although multiple witnesses testified that T.R. obviously loved her children and was trying to improve her parenting, the same witnesses overwhelmingly testified that it was not in A.S.'s best interests to remain with T.R. For example, CPS Rayfield and CPS Jeannie Weasel Tail both testified that they believed it was in A.S.'s best interests that T.R.'s parental rights be terminated. Marilyn Ketchum, a family support worker for Family Concepts, testified that T.R. had trouble accepting her suggestions and lied to her on multiple occasions. In the fall of 2014, T.R. informed Ketchum that she would be unable to attend visitation with her children because she was going out of town to see a medical specialist. When Ketchum discovered that T.R. never visited a specialist, she confronted her with this information, and T.R. "went nuclear" in front of M.R. and A.S. by angrily yelling at Ketchum. In June 2014, T.R. began having unsupervised overnight visits with A.S. According to Ketchum, these visits stopped when A.S. was returned to her foster mother with "significant marks and bruising." T.R. told Ketchum three different, conflicting stories to explain the incident, none of which Ketchum was able to verify.

¶8    While T.R. did comply with numerous aspects of her treatment plan—such as attending some parenting classes, having supervised visitation with A.S., and completing a psychological evaluation and a chemical dependency evaluation—multiple witnesses testified that she still lacked essential parenting skills. CPS Rayfield, who started working with the family before A.S. was removed and continued working with them until

4

February 2014, testified that T.R. had not learned appropriate and safe boundaries for herself and her children, one of her treatment plan tasks. Mary Huigen, a family support specialist with Family Outreach, testified that when A.S. was removed from T.R.'s care at six months old, she was fifty-percent delayed in her "gross motor, fine motor, cognitive, language, and social/emotional" abilities, meaning that she was testing at a three-month-old level. Cheryl Ronish, a licensed clinical social worker, testified that T.R. did not have the ability to manage a child with special needs. Although two witnesses testified that A.S. was no longer delayed, she had been living with a foster family since the Department removed her from T.R.'s care.

¶9    "A parent's right to the care and custody of a child is a fundamental liberty interest which must be protected by fundamentally fair procedures." *A.K.*, ¶ 20. However, a child's best interests take precedence over parental rights, and courts must give primary consideration to the "physical, mental, and emotional conditions and needs of the child." *A.K.*, ¶ 20 (quoting § 41-3-609(3), MCA). Pursuant to § 41-3-604(1), MCA, "[i]f a child has been in foster care under the physical custody of the state for 15 months of the most recent 22 months, the best interests of the child must be presumed to be served by termination of parental rights." When the Department filed its petition for termination of T.R.'s parental rights, A.S. was two-and-a-half years old and had been in the Department's custody for over two years.

¶10    "[E]vidence of rehabilitation on the part of the parent is germane to the issue of that parent's ability to care for his or her child in the future;" however, such evidence "does not render a district court powerless to find future danger to the child, it is simply

5

evidence to be considered by the district court, and is subject to the same standard of review as any other evidence." *In re J.C.*, 2003 MT 369, ¶ 16, 319 Mont. 112, 82 P.3d 900 (citations omitted). While T.R. did show some improvement, the majority of the witnesses who gave an opinion regarding termination of T.R.'s parental rights testified that it was in A.S.'s best interests for T.R.'s rights to be terminated. Several witnesses testified that T.R.'s inability to parent A.S. was unlikely to change within a reasonable time, and that A.S. needed permanency. Ketchum and Rayfield both testified that T.R. continued to exhibit the same inability to supervise her children that led to the Department's initial involvement in the case.

¶11 Clear and convincing evidence supported the District Court's decision that T.R.'s court-approved treatment plan had not been successful, and that the conduct or condition rendering her unfit to parent was unlikely to change within a reasonable time. *See* § 41-3-609(1)(f), MCA. The District Court did not abuse its discretion in terminating T.R.'s parental rights to A.S.

¶12 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's findings of fact are not clearly erroneous, and its ruling was not an abuse of discretion. We affirm.

/S/ JAMES JEREMIAH SHEA

6

We Concur:

/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JIM RICE