FILED

02/15/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0366

DA 21-0366

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 34N

IN THE MATTER OF:

M.D.,

      A Youth in Need of Care.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DN 19-49A
Honorable Peter B. Ohman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Daniel V. Biddulph, Peppertree Law, PLLC, Missoula, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Jonathan M. Krauss, Assistant
Attorney General, Helena, Montana

          Marty Lambert, Gallatin County Attorney, Bradley Bowen, Deputy County
Attorney, Bozeman, Montana

          Submitted on Briefs:  February 2, 2022

          Decided:  February 15, 2022

Filed:

          _____
                        Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 K.W. (Mother) appeals the order of the Eighteenth Judicial District, Gallatin County, terminating her parental rights to her minor child, M.D. We address whether the District Court erred when it terminated Mother's parental rights because it concluded Mother's condition was unlikely to change in a reasonable amount of time pursuant to § 41-3-609(1)(f), MCA. We affirm.

¶3 In September 2019, The Montana Department of Health and Human Services (the Department) commenced this proceeding after an emergency removal of nine-year-old M.D. from Mother's care. M.D. has remained in foster care since that time. The removal followed reports of Mother's declining mental health, including aggressive behavior and homicidal ideations. In interactions with the Department, Mother struggled to maintain conversations, control her mood, and made various paranoid statements about celebrities and the government.

¶4 The Department petitioned to adjudicate M.D. a youth in need of care and sought temporary legal custody. Mother did not attend the adjudication hearing. Mother's counsel reported that due to Mother's severe mental health issues, it was difficult to effectively communicate with her, and as such, was unable to determine Mother's position on the

Department's petition. The District Court granted emergency protective services and adjudicated M.D. as a youth in need of care following a hearing on December 16, 2019.

¶5 In January 2020, the court ordered a treatment plan for Mother, requiring her to maintain safe and stable housing and sufficient financial support, and to obtain a parenting assessment and a psychological evaluation. The treatment plan required Mother to "demonstrate her psychological issues are being treated and managed to a degree that mitigates immediate or impending danger threats to her child."

¶6 In April 2020, the Department submitted a status report indicating Mother had made minimal progress on her treatment plan. While she did obtain a psychological evaluation, resulting in a diagnosis of schizophrenia, Mother's doctor recommended consistent use of medication to establish a "baseline" before she would be able to "engage in normal parenting." Mother's long-time therapist reported that talk therapy was minimally effective and that she had seen a "significant decline" in Mother's functioning. The Department repeatedly discussed the evaluation's recommendation for medication with Mother, who repeatedly expressed resistance.

¶7 Throughout this period, the Department provided Mother with a referral to Hearts and Homes for supervised visitation and parenting support. Mother obtained therapy from Amanda Heath, who also attempted to assist Mother in addressing her financial needs. However, due to the difficulty in communicating with Mother and her refusal to take medication, these efforts were largely unproductive. Mother maintained stable housing; however, she refused to allow the Department to visit her at home. As such, the Department was unable to determine whether the home was a safe environment for M.D.

3

¶8 In July 2020, the Department petitioned for an extension of temporary legal custody of M.D. Referring to the April 2020 status report, the Department stated that "[l]ittle has changed." Mother's ongoing delusional thinking and resistance to medication made it difficult to make any progress toward reunification with her child. Mother had been seeing a new doctor, Dr. Stan, who purportedly prescribed Mother medication, but Mother did not allow the Department to speak directly to Dr. Stan. The Department was not confident Mother was taking the medication. Mother's counsel reported she was "a couple of months away from homelessness" and still resistant to obtaining social security benefits. Another status report was filed in November 2020, reporting no progress by Mother to complete her treatment plan.

¶9 In January 2021, the Department filed a petition to terminate Mother's parental rights. It laid out in detail the numerous efforts made by the Department to support both Mother and M.D. and facilitate reunification. At the termination hearing in June 2021, counsel for Mother objected to the testimony of her mental health providers. The court allowed the testimony citing § 50-16-535(1), MCA, which allows disclosure of health care information if, *inter alia*, the information is relevant to a proceeding brought under Title 41, chapter 3, or if the party seeking the information has demonstrated a compelling state interest that outweighs the patient's privacy interest. Section 50-16-535(1)(i), (j), MCA. Throughout the termination hearing, Mother consistently interrupted with delusional and paranoid outbursts.

¶10 The District Court found that Mother failed to complete critical tasks such as addressing her mental health condition, obtain safe and appropriate housing, failed to

4

maintain a sustainable and legal source of income, failed to ensure M.D.'s educational needs would be met, and failed to follow the recommendations of the psychological evaluation. The court found that Mother's extensive history and current psychological issues impacted her ability to safely parent M.D., and that the parenting deficits were of such a nature and duration that Mother was unlikely to obtain the ability to adequately care for M.D. within a reasonable time.

¶11 We review a district court's decision to terminate parental rights for an abuse of discretion. *In re A.B.*, 2020 MT 64, ¶ 23, 399 Mont. 219, 460 P.3d 405 (citing *In re R.J.F.*, 2019 MT 113, ¶ 20, 395 Mont. 454, 443 P.3d 387). We determine if a district court's findings of fact supporting termination are clearly erroneous and whether its conclusions of law are correct. *In re D.B.*, 2007 MT 246, ¶ 18, 339 Mont. 240, 168 P.3d 691 (citing *In re K.J.B.*, 2007 MT 216, ¶ 23, 339 Mont. 28, 168 P.3d 629). If a child has been in foster care for 15 months of the most recent 22 months, the court will presume that termination of parental rights is in the best interest of the child. Section 41-3-604(1), MCA.

¶12 A district court may terminate parental rights upon a finding of clear and convincing evidence that the child is an adjudicated youth in need of care, that the parent's court-ordered treatment plan has not been complied with or successful, and the parent's conduct or condition rendering them unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA. The district court must find that "continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care." Section 41-3-609(2), MCA.

¶13     We have held that the statutory requirement of finding the parent unlikely to change within a reasonable time is not a question of whether the parent "has made progress or would make some progress in the future, but whether the parent is likely to make enough progress within a reasonable time to overcome the circumstances rendering her unfit to parent." *In re A.B.*, ¶ 27 (citations omitted).  The district court must assess "the past and present conduct of the parent." *In re S.C.L.*, 2019 MT 61, ¶ 9, 395 Mont. 127, 437 P.3d 122 (citations omitted).  The court will give primary consideration to "the physical, mental, and emotional conditions and needs of the child." *In re A.B.*, ¶ 24 (citing § 41-3-609(3), MCA).

¶14     Mother argues that the Department failed to make reasonable efforts to reunify her with M.D., specifically by failing to tailor a treatment plan that addresses her mental health diagnosis and by providing Mother with residential psychiatric care.  In dependent-neglect proceedings, the Department must engage in reasonable efforts to reunify the family. Section 41-3-423(1), MCA.  The determination of whether the Department made reasonable efforts "is not a separate requirement for termination." *In re C.M.*, 2019 MT 227, ¶ 22, 397 Mont. 275, 449 P.3d 806 (quoting *In re R.J.F.*, ¶ 26).  Such a finding may be relevant in considering a parent's capacity to change, but "a parent's unlikelihood of change may well be unaffected" by allegedly lacking efforts. *In re C.M.*, ¶ 22; *see also In re D.B.*, ¶ 25.  In the case of a disabled parent, the Department's reunification efforts should include a treatment plan that considers the parent's disability and is customized to meet those particular needs. *In re X.M.*, 2018 MT 264, ¶ 19, 393 Mont. 210, 429 P.3d 920 (citing *In re D.B.*, ¶ 34).  The Department is required to make reasonable,

6

but not "herculean efforts." *In re X.M.*, ¶ 19 (quoting *In re K.L.*, 2014 MT 28, ¶ 41, 373 Mont. 421, 318 P.3d 691).

¶15 Here, Mother's treatment plan appropriately considered Mother's mental health issues, requiring her to obtain a psychological evaluation and follow its recommendations. The Department took an active role in catering to the specific needs of both M.D. and Mother. It provided M.D. with a stable foster care placement, individualized therapy, health care, and financial support. It connected M.D. and Mother to supervised visits through Hearts and Homes. It attempted to connect Mother with social security benefits and referred her to several resources including mental health counseling. The Department made several unsuccessful attempts to get Mother to follow the psychological evaluation's recommendations to take medication. The District Court did not abuse its discretion when it found the Department had made reasonable efforts at reunification.

¶16 Mother also argues that the District Court erred in allowing testimony of her mental health providers over her objection because although § 50-16-535(1), MCA, allows compulsory disclosure of relevant health care information under certain circumstances, rules of evidence still protect the mental health professional-client privilege under § 26-1-807, MCA, and such evidence may not be admissible. But even without considering the testimony of the mental health providers at the termination proceedings, there is ample evidence in the record that supports the District Court's decision, including Mother's own testimony and the District Court's observations of her "ongoing outbursts that were clearly delusional" during the termination proceedings. M.D.'s therapist, Joni Patterson-Croskey, testified about M.D.'s struggles stemming from living with her Mother during periods of

7

serious psychosis. Bonnie Neuman, Child Protective Specialist, testified Mother was incapable of engaging in safety planning for M.D., would not permit anyone into her home to determine if it was safe or suitable for M.D., and did not ensure M.D. attended school. Neuman reported Mother had not engaged in family therapy due to her mental health condition. The District Court did not abuse its discretion in holding the Department showed by clear and convincing evidence that termination was in the best interest of the child. The record is clear that Mother is unlikely to make sufficient progress to overcome the circumstances rendering her unfit to parent within a reasonable time.

¶17 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's interpretation and application of the law were correct. The District Court's findings of fact are not clearly erroneous. The District Court's ruling was not an abuse of discretion.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

8